## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

**v.**

**D-1   RICHARD SOLLARS,**
**D-2   SHADY AWAD, and**
**D-3   JEFFREY BAUM,**

Case:2:19-cr-20836
Judge: Goldsmith, Mark A.
MJ: Stafford, Elizabeth A.
Filed: 12-18-2019 At 11:06 AM
USA V SEALED MATTER (LG)

**VIOLATIONS:**
**18 U.S.C. § 371 (Conspiracy)**
**18 U.S.C. § 666(a) (Bribery)**
**18 U.S.C. § 1343 (Wire Fraud)**

**Defendants.**

_____/

## INDICTMENT

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times relevant to this indictment:

1.      Defendant **RICHARD SOLLARS** was the elected Mayor of the City of Taylor, Michigan ("Taylor"), a local government entity that received federal assistance in excess of $10,000 in each of the calendar years 2015 through 2019.

2.      Beginning in 2015, the City of Taylor began a program known as the Right of First Refusal program ("ROFR program"). Under the program, Taylor would exercise its right of first refusal to acquire tax-foreclosed properties in its city from the Wayne County Treasurer's Office. Then, Taylor would select one or more developers to acquire, redevelop and resell the tax-foreclosed properties, which consisted of single family homes, as well as commercial and vacant properties.

1

Taylor would enter into agreements with the developers, which required them to pay Taylor's purchase price for the properties, rehabilitate the properties and pay all fees associated with rehabilitation.   After the developers fulfilled their obligations under the agreement, Taylor would issue a certificate of occupancy and transfer ownership of the properties to the developers.   **RICHARD SOLLARS** had considerable control and influence over the ROFR program, including the decision of which developers were selected to participate.

3. **RICHARD SOLLARS** operated a political campaign fund entitled "Committee to Elect Richard (Rick) Sollars, Jr." ("the campaign fund").

4. **SHADY AWAD** was a businessman who owned a property development company called Realty Transition, LLC ("Realty Transition"). **AWAD** also owned a company called Downriver Management, LLC.

5. **JEFFREY BAUM** was an employee of Taylor who served as the manager of Taylor's Community Development Department.   As manager of the Community Development Department, **BAUM** managed the ROFR Program. **BAUM** also served as the treasurer of **SOLLARS's** campaign fund.

6. In each year between 2015 and 2019, **SHADY AWAD'S** company, Realty Transition, was selected by **RICHARD SOLLARS** to develop the vast majority of the tax-foreclosed properties in the City's ROFR program.   In 2015, Realty Transition was awarded the right to develop all 95 of Taylor's tax-foreclosed

properties.   In 2016, Realty Transition received 29 of Taylor's 34 tax-foreclosed properties.   In 2017, Realty Transition received 38 of Taylor's 45 tax-foreclosed properties.   In 2018, Realty Transition received Taylor's entire tax-foreclosed property inventory, totaling 37 properties.

## COUNT ONE

(18 U.S.C. §§ 371 & 666(a) – Conspiracy to Commit Bribery
Concerning Programs Receiving Federal Funds)

**D-1 RICHARD SOLLARS**
**D-2 SHADY AWAD**
**D-3 JEFFREY BAUM**

1.      Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count One as if fully set forth herein.

2.      From in or about June 2015, through in or about February 2019, in the Eastern District of Michigan, Southern Division, and elsewhere, defendants **RICHARD SOLLARS, SHADY AWAD,** and **JEFFREY BAUM** did unlawfully, willfully, and knowingly combine, conspire, confederate, and agree with each other, and others, to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, over $30,000 in renovations to **SOLLARS'** home, over $11,000 in renovations to **SOLLARS'** lake house, over $12,000 worth of household appliances and cabinets, cash, and other items of value, with the intent to influence and reward **SOLLARS** and **BAUM** in connection with a business, transaction, or

series of transactions of the City of Taylor involving $5,000 or more, in violation of

Title 18, United States Code, Section 666(a).

## MANNER AND MEANS BY WHICH
## THE CONSPIRACY WAS CARRIED OUT

3.      It was part of the conspiracy that, in exchange for items of value,

**RICHARD SOLLARS** and **JEFFREY BAUM** would assist **SHADY AWAD** and

other developers in obtaining properties owned by Taylor in connection with the

City's ROFR program.

4.      It was further part of the conspiracy that **SHADY AWAD** would

reward **RICHARD SOLLARS** for **SOLLARS's** assistance in obtaining properties

under the ROFR program by providing **SOLLARS** with free renovations at his home

and lake house that included installing hardwood floors, garage doors, front doors,

and a garage storage unit. **AWAD** also refinished a deck at **SOLLARS's** lake house

and provided **SOLLARS** with a humidor, a refrigerator, a double oven with a gas

range, a microwave, a dishwasher, a washer and dryer, a vacuum cleaner and metal

storage cabinets.

5.      It was further part of the conspiracy that **SHADY AWAD** would

provide items of value to **JEFFREY BAUM to** influence and reward **BAUM** for

**BAUM's** assistance in obtaining properties under the ROFR program.

6.      It was further part of the conspiracy that **JEFFREY BAUM**, with the

4

assistance and approval of **RICHARD SOLLARS**, would accept thousands of dollars in cash from *Developer A*, in exchange for providing *Developer A* properties under the ROFR program.

7.     It was further part of the conspiracy that **JEFFREY BAUM** would direct public officials at the City of Taylor to dismiss tickets charging civil infractions that had been issued by the City against Realty Transition and **SHADY AWAD.**

8.     Between 2016 and 2018, **RICHARD SOLLARS** used his influence as a public official to persuade public officials in nearby cities to award Realty Transition tax-foreclosed properties for **SHADY AWAD** to rehabilitate.

9.     Between 2017 and 2019, **RICHARD SOLLARS** directed **SHADY AWAD** to provide **AWAD's** credit card information to *Developer A,* who was interested in acquiring tax-foreclosed properties under the City's ROFR program. *Developer A* also owned a market in the City of Taylor. **SOLLARS** then directed *Developer A* to charge various amounts to **AWAD's** credit card. At **SOLLARS**'s direction, *Developer A* gave **SOLLARS** cash in the amounts *Developer A* charged to **AWAD's** credit card. Cash **SOLLARS** obtained from *Developer A* from charges to **AWAD's** credit card totaled over $19,000.

10.     In 2017 and 2018, **RICHARD SOLLARS** went on trips to Las Vegas with **SHADY AWAD** and, during those trips, accepted thousands of dollars in cash from **AWAD**.

## OVERT ACTS

11.     In furtherance of the unlawful conspiracy, and to effect its objectives, the defendants and their co-conspirators committed the following overt acts, among others, in the Eastern District of Michigan and elsewhere.

12.     On or about July 20, 2015, without a legitimate bid process, **RICHARD SOLLARS** recommended to the Taylor City Council that **SHADY AWAD's** company Realty Transition be awarded all of the tax-foreclosed properties that Taylor had or would acquire under its ROFR Program.

13.     In or about July 2015, at the direction of **RICHARD SOLLARS**, Reality Transition was awarded all 95 tax-foreclosed properties in Taylor's ROFR Program.

14.     On June 10, 2016, **SHADY AWAD** exchanged text messages with **RICHARD SOLLARS** regarding **AWAD** having *Contractor A* replace the hardwood flooring on the second level of **SOLLARS's** home.     **AWAD** told **SOLLARS** that *Contractor A's* work was "amazing," and joked that "[t]he price will be even better than the work." **SHADY AWAD** ended the text message with a smiley face emoji with a winking eye.

15.   On August 8, 2016, **SHADY AWAD** texted **RICHARD SOLLARS** asking if **AWAD** could send "guys" to **SOLLARS's** house to "clear out upstairs to clear out furniture and carpet." **AWAD** wrote, "[h]ardwood starting tomorrow morning is that fine?" **SOLLARS** responded, "That works."

16.   Between August 12, 2016, and August 26, 2016, at **SHADY AWAD's** direction, *Contractor A* installed hardwood on the floor of the entire second level of **RICHARD SOLLARS's** home.

17.   On or about August 12, 2016, **SHADY AWAD** caused a Realty Transition check in the amount of $1,700 to be issued to *Contractor A* to pay for the hardwood flooring on the second level of **RICHARD SOLLARS's** home.

18.   On August 16, 2016, at the direction of **RICHARD SOLLARS,** Realty Transition was awarded 29 of the 34 tax-foreclosed properties in Taylor's ROFR Program.

19.   On or about August 26, 2016, **SHADY AWAD** caused a check from Realty Transition, in the amount of $1,200 to be issued to *Contractor A* to pay for the hardwood flooring on the second level of **RICHARD SOLLARS's** home.

20.   In August 2016, **SHADY AWAD** supplied hardwood flooring to *Contractor A* for installation on the second level of **RICHARD SOLLARS's** home.

21.   On September 26, 2016, **JEFFREY BAUM** texted **RICHARD SOLLARS** about a wooden cigar humidor costing over $1,600 that had been

purchased by **SHADY AWAD** for **SOLLARS**.  In the text, **BAUM** told **SOLLARS** "Your humidor has shipped. 5-7 business days, 210 for shipping… He [**AWAD**] will be whining about every fee for the next six months."

22.    On September 26, 2016, **RICHARD SOLLARS** texted **SHADY AWAD**, asking him whether the humidor included Cuban cigars.  One minute later, **SOLLARS** texted **JEFFREY BAUM**, stating, "He [**AWAD**] will be calling you in a panic.  I just asked him when the Cuban cigars to fill it will be arriving."

23.    On October 13, 2016, **SHADY AWAD** texted **RICHARD SOLLARS,** letting him know that the humidor that **AWAD** had purchased for **SOLLARS** was shipping that day.

24.    In or about 2017, **JEFFREY BAUM** met with *Developer A* at *Developer A's* market and transferred two of Taylor's tax-foreclosed properties to *Developer A*.  Around that same time in 2017, *Developer A* paid **BAUM** a $1,000 cash kickback.

25.    On April 19, 2017, **SHADY AWAD** directed *Contractor A* to meet with **RICHARD SOLLARS** to discuss installing hardwood floors at **SOLLARS's** lake house.

26.    On May 19, 2017, **RICHARD SOLLARS** complained to **SHADY AWAD** about the delay in *Contractor A's* completion of the hardwood flooring at **SOLLARS's** lake house, stating "The Friday of Memorial Day weekend? I though

(sic) he said 4-5 days?? We have a ton of people coming over that weekend." After receiving that message, **AWAD** contacted *Contractor A* and asked, "how many days left at Rick's **[SOLLARS]** just wondering." *Contractor A* responded that the lake house flooring would probably be completed by the end of the week.

27.    On May 23, 2017, *Contractor A* texted **SHADY AWAD** a photograph of the hardwood flooring *Contractor A* had installed at **RICHARD SOLLARS's** lake house, with a caption "A little sneak peek for Rick."

28.    On May 26, 2017, *Contractor A* and **SHADY AWAD** had a text discussion about payment for installing the hardwood flooring at **RICHARD SOLLARS's** lake house. *Contractor A* inquired whether **AWAD** was still at his office and told **AWAD,** "Got a key and the bill for you.  Ricks total $6962.00." **AWAD** responded with several sad face emojis and wrote, "And we pay it in two weeks." *Contractor A* responded "Don't have to give it all right now, but definitely need to pick up good portion to pay all the guys today if possible?" **AWAD** told *Contractor A*, "Of course stop on in."

29.    On or about May 26, 2017, **SHADY AWAD** issued a check from his company Downriver Management in the amount of $4,000 to *Contractor A* as partial payment for the hardwood flooring installed in **RICHARD SOLLARS's** lake house.  The memo line of the check concealed **SOLLARS's** lake house address, instead listing the address of one of **AWAD's** properties.

30.     On or about June 2, 2017, **SHADY AWAD** issued a check from his Downriver Management account in the amount of $3,000 to *Contractor A* as the final payment for the hardwood installed at **RICHARD SOLLARS**'s lake house. The memo line of the June 2, 2017 check listed an address for property owned by **AWAD**, stating, "9855 Mortonview Mr. Hardwood Special."

31.     On April 26, 2017, **RICHARD SOLLARS** and **SHADY AWAD** exchanged text messages regarding prices for kitchen appliances from ABC Warehouse for **SOLLARS's** home.   **AWAD** texted **SOLLARS** a list of model numbers and individual prices for a refrigerator, stove, microwave oven and dishwasher.

32.     On or about June 6, 2017, using his ABC Warehouse corporate account, **SHADY AWAD** ordered a refrigerator, stove, microwave oven and dishwasher for **RICHARD SOLLARS's** home.   **AWAD** originally directed ABC Warehouse to deliver the appliances to "9855 Mortonview," but later changed the delivery address to **SOLLARS's** home address.

33.     On June 6, 2017, **SHADY AWAD** caused the kitchen appliances listed above to be delivered and installed in **RICHARD SOLLARS's** home.  The invoice for the appliances was issued in the name of "SHADY PROPERTY LLC," for an amount of $5,300.

34.     On July 17, 2017, **SHADY AWAD** contacted *Contractor A* to discuss refinishing the deck at **RICHARDS SOLLARS's** lake house.  **AWAD** texted *Contractor A*, "Ricks house this week pls …Can you take care of deck pls."  After *Contractor A* responded that he was "trying," **AWAD** responded, "Pls very important."  Approximately one hour later, **AWAD** texted *Contractor A*, "Mayor house sir," to which *Contractor A* responded, "On it."  **AWAD** added "Ok u know how he is."

35.     On July 18, 2017, at the direction of **RICHARD SOLLARS**, Realty Transition was awarded 38 of approximately 43 of Taylor's tax-foreclosed properties in the ROFR Program.

36.     On July 20, 2017, **SHADY AWAD** texted *Contractor A*, "Any news on ricks deck."  *Contractor A* responded that his worker said he would be out there and that he would check.  A few minutes later, **RICHARD SOLLARS** and **AWAD** texted each other about the work on **SOLLARS's** lake house deck.

> **SOLLARS:** I just left and not a sole in sight.  They haven't even been there to power wash.  I am now going to run into a huge scheduling conflict.
>
> **AWAD:**      when is the deal line … Sorry pls let me know the deadline I'll go out there if I have 2.

A few minutes later, *Contractor A* notified **SHADY AWAD** that he and his workers were going to begin work on the deck at **RICHARD SOLLARS's** lake house the following day.

37.     Later on July 20, 2017, **RICHARDS SOLLARS** expressed his frustration about the delay in the deck work at his lake house to **SHADY AWAD** in a text message exchange.

38.     Following the message of frustration from **RICHARD SOLLARS**, **SHADY AWAD** pleaded with *Contractor A*, "Pls [*Contractor A*] I'll pay whatever … Stay on [*the worker building the deck*] pls thanks … **My relationship with Rick [*SOLLARS*] is worth $1 million so whatever it takes I'll pay for it.**" (emphasis added).

39.     On July 22, 2017, **SHADY AWAD** told **RICHARD SOLLARS** in text messages that he planned to do a better job managing the contractor working on his lake house deck. **AWAD** texted, "if I could pay a million bucks to have it [*the deck*] done u know I would I'm really upset about this and I'm gonna stay on the sky until the job is done." One minute later, **SHADY AWAD** texted *Contractor A* stating, "I would rather pay twice just to make…Rick [*SOLLARS*] happy please please please power wash stain it [*the deck*] …right away."

40.     On August 1, 2017, *Contractor A* and **SHADY AWAD** texted about payment for refinishing the deck at **SOLLARS's** lake house. *Contractor A* told **AWAD**, "Total bill $2900, but I'll take care of $900, towards what I owe u for the wood, so just remaining $2000." **AWAD** responded, "love u stop by anytime ..." *Contractor A* asked how he should bill the work on **SOLLARS's** deck. **AWAD**

12

texted, "6944 Mcguire," which is the address of a house that **AWAD** owned through the ROFR Program.

41.    Between August 1, 2017 and August 10, 2017, **RICHARD SOLLARS** and **SHADY AWAD** exchanged several text messages about the deck work.

**SOLLARS**: I will need them not to show up in the am.  I need to accept a delivery in the basement.  Honestly, if they don't want to finish tomorrow, I may just need to finish it myself.  There (sic) schedule is becoming really tough to work around.  They are making a small job difficult.

**AWAD**:    Please let them finish.  I cash them out today top dollar they promised it's gonna look immaculate … They are so close from (sic) completion [*Contractor A*] is a cluster fuck but his end product is usually very good."

**SOLLARS**: We are getting a desk delivered between 830 and 1030 tomorrow morning.  They can come anytime after 1030.  I have honestly never seen such a small task become such a big project.  They have had one guy and I swear to you the only thing he did was the railing today.

**AWAD**:    Rick I apologize for everything I don't know what to say they charged me $3500 I told them to do the best job and cost is irrelevant U don't know if [*Contractor A*] left comfortable but he has a clean heart just a cluster fuck.  I would pay any amount of money to fix the situation I truly apologize.

42.    On August 11, 2017. **SHADY AWAD** issued a check to *Contractor A* in the amount of $7,900, of which $2,900 was payment for work on the deck at **RICHARD SOLLARS's** lake house.

43.     On or about August 21, 2017, in order to avoid detection of their illegal activities, **RICHARD SOLLARS** and **SHADY AWAD** began using an app called WhatsApp to send encrypted messages. **SOLLARS** sent **AWAD** a message using WhatsApp that stated, "Test." **AWAD** responded, "Perfect...Best way to talk and text thx." Following that, **RICHARD SOLLARS** and **SHADY AWAD** engaged in the following text message conversation using WhatsApp messaging:

> **SOLLARS:** Cool ... Let me know when you talk to him [*Contractor A*].
>
> **AWAD**:   No filter, If your pissed yell at me it helps me improve and get better.
>
> **SOLLARS:** I won't get pissed as long as [*Contractor A's* deck worker] doesn't come over...Meet me at Bigby tomorrow am for a quick 5 min around 8:30 if you can
>
> **AWAD:**   Ok This app is completely private
>
> **SOLLARS:** Easier to discuss than text. It will be quick and painless ... I promise...lol
>
> **AWAD:**   I'll be there

44.     In or about October 2017, while in Las Vegas, Nevada, **SHADY AWAD** gave **RICHARD SOLLARS** at least $4,000 in cash so that **SOLLARS** could gamble. **AWAD** called the money a "care package."

45.     In or about September 2017, **SHADY AWAD** directed *Contractor A* to install additional hardwood flooring in **RICHARD SOLLARS's** home and provided **SOLLARS's** wife's contact information to coordinate the installation.

46.     On November 10, 2017, **SHADY AWAD** texted *Contractor A* and asked, "Did floors arrive for rick [*SOLLARS*]." *Contractor A* advised **AWAD** that the wood had arrived and that he had already confirmed with **RICHARD SOLLARS's** wife to install the floors on Monday of the following week.

47.     On November 21, 2017, *Contractor A* installed hardwood flooring over the entire basement floor at **RICHARD SOLLARS's** home.  Later, *Contractor A* contacted **SHADY AWAD** about payment.  In order to conceal his illegal activities, **AWAD** told *Contractor A* to bill the job to **AWAD's** property at 9855 Mortonview.

48.     On November 22, 2017, *Contractor A* texted **SHADY AWAD**, "Cool to grab a check shortly? Should I head over to the office?"  **AWAD** told *Contractor A* he could, but when *Contractor A* arrived there he texted **AWAD** again to let him know no one was at his office and that "Total owed $4550.  Need as close to three as possible."

49.     On November 22, 2017, **SHADY AWAD** issued a check from his Realty Transition account to *Contractor A* in the amount of $4,550.  Included on the memo line was the address "9855 Mortonview."  The money was payment for the hardwood flooring installed in **SOLLARS's** basement.

50.     On December 23, 2017, **RICHARD SOLLARS** wished **SHADY AWAD** a "very merry Christmas" and texted, "let's hook up next week when you

get back." **AWAD** responded, "**Thx u for everything RT's** [*Realty Transition's*] **silent partner.**" (emphasis added).

51.     In or about December 2017, *Developer A* gave **JEFFREY BAUM** three $250 gift cards.

52.     On March 5, 2018, **SHADY AWAD** advised **RICHARD SOLLARS** "ABC [*ABC Warehouse*] said it's special order next week should be in."

53.     On April 26, 2018, **SHADY AWAD** purchased a washer and dryer for **RICHARD SOLLARS**, along with warranties, totaling $3,678.65.

54.     On July 17, 2018, at the direction of **RICHARD SOLLARS,** Realty Transition was awarded all 37 of the City's tax-foreclosed properties in the ROFR Program.

55.     In or about July 2018, *Developer A*, with the knowledge and approval of **RICHARD SOLLARS**, gave **JEFFREY BAUM** approximately $4,500 in cash, to reward **BAUM** for helping *Developer A* obtain nine properties from the ROFR Program.

56.     In or about July 2018, **RICHARD SOLLARS** told *Developer A* not to "spoil" **JEFFREY BAUM** by paying him too large of kickbacks related to the properties *Developer A* received from the ROFR program.

57.     On September 19, 2018, **SHADY AWAD** directed *Contractor A* to call **RICHARD SOLLARS's** wife.

58. On September 21, 2018, **SHADY AWAD** urged *Contractor A* to install additional hardwood flooring in **SOLLARS's** home, texting, "Pls get floor over there we have to finish it and start rick Monday it's urgent thx."

59. On or about October 2, 2018, *Contractor A* installed hardwood flooring in two rooms on the main level of **RICHARD SOLLARS's** home.

60. On October 12, 2018, *Contractor A* texted **SHADY AWAD** about payment for the hardwood flooring, telling **AWAD** he owed *Contractor A*, "$2,500 total, for Ricks."

61. On or about October 12, 2018, **SHADY AWAD** issued *Contractor A* a check from his Downriver Management company in the amount of $2,500 to pay for **SOLLARS's** hardwood flooring.

62. In or about December 2018, *Developer A* again gave **JEFFREY BAUM** three $250 gift cards.

63. On or about December 24, 2018, *Developer A* gave **JEFFREY BAUM** $500 in cash.

All in violation of Title 18, United States Code, Sections 371 and 666(a).

## COUNT TWO

(18 U.S.C. § 666(a) - *Bribery Concerning Programs Receiving Federal Funds*)

## D-1   RICHARD SOLLARS

1. Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count Two as if fully set forth herein.

2. In or about August 2016, in the Eastern District of Michigan, Southern Division and elsewhere, defendant **RICHARD SOLLARS** did corruptly solicit and demand for the benefit of a person, and accepted and agreed to accept a thing of value, namely, the installation of hardwood flooring on the entire second level of **SOLLARS's** home, intending to be influenced and rewarded in connection with a business or transaction of the City of Taylor involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a).

## COUNT THREE

(18 U.S.C. § 666(a) - *Bribery Concerning Programs Receiving Federal Funds*)

## D-2   SHADY AWAD

1. Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count Three as if fully set forth herein.

2. In or about August 2016, in the Eastern District of Michigan, Southern Division and elsewhere, defendant **SHADY AWAD** did corruptly give, offer and agree to give a thing of value to **RICHARD SOLLARS**, namely, the installation of

hardwood flooring on the entire second level of **SOLLARS's** home, with the intent to influence and reward **SOLLARS** in connection with a business or transaction of the City of Taylor involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a).

## COUNT FOUR

(18 U.S.C. § 666(a) - *Bribery Concerning Programs Receiving Federal Funds*)

## D-1   RICHARD SOLLARS

1.    Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count Four as if fully set forth herein.

2.    In or about May 2017, in the Eastern District of Michigan, Southern Division and elsewhere, defendant **RICHARD SOLLARS** did corruptly solicit and demand for the benefit of a person, and accepted and agreed accept to a thing of value, namely, the installation of hardwood flooring at **SOLLARS's** lake house, intending to be influenced and rewarded in connection with a business or transaction of the City of Taylor involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a).

## COUNT FIVE

(18 U.S.C. § 666(a) - *Bribery Concerning Programs Receiving Federal Funds*)

### D-2   SHADY AWAD

1.  Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count Five as if fully set forth herein.

2.  In or about May 2017, in the Eastern District of Michigan, Southern Division and elsewhere, defendant **SHADY AWAD** did corruptly give, offer and agree to give a thing of value to **RICHARD SOLLARS**, namely, the installation of hardwood flooring at **SOLLARS's** lake house, with the intent to influence and reward **SOLLARS** in connection with a business or transaction of the City of Taylor involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a).

## COUNT SIX

(18 U.S.C. § 666(a) - *Bribery Concerning Programs Receiving Federal Funds*)

### D-1   RICHARD SOLLARS

1.  Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count Six as if fully set forth herein.

2.  In or about June 2017, in the Eastern District of Michigan, Southern Division and elsewhere, defendant **RICHARD SOLLARS** did corruptly solicit and demand for the benefit of a person, and accepted and agreed to accept things of value,

namely, a refrigerator, a double oven with a gas range, a microwave and a dishwasher, intending to be influenced and rewarded in connection with a business or transaction of the City of Taylor involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a).

## COUNT SEVEN

(18 U.S.C. § 666(a) - *Bribery Concerning Programs Receiving Federal Funds*)

### D-2   SHADY AWAD

1. Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count Seven as if fully set forth herein.

2. In or about June 2017, in the Eastern District of Michigan, Southern Division and elsewhere, defendant **SHADY AWAD** did corruptly give, offer and agree to give things of value to **RICHARD SOLLARS**, namely, a refrigerator, a double oven with a gas range, a microwave and a dishwasher, with the intent to influence and reward **SOLLARS** in connection with a business or transaction of the City of Taylor involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a).

## COUNT EIGHT

(18 U.S.C. § 666(a) - *Bribery Concerning Programs Receiving Federal Funds*)

### D-1   RICHARD SOLLARS

1.      Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count Eight as if fully set forth herein.

2.      In or about August 2017, in the Eastern District of Michigan, Southern Division and elsewhere, defendant **RICHARD SOLLARS** did corruptly solicit and demand for the benefit of a person, and accepted and agreed to accept a thing of value, namely, the refinishing of a deck at **SOLLARS's** lake house, intending to be influenced and rewarded in connection with a business or transaction of the City of Taylor involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a).

## COUNT NINE

(18 U.S.C. § 666(a) - *Bribery Concerning Programs Receiving Federal Funds*)

### D-2   SHADY AWAD

1.    Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count Nine as if fully set forth herein.

2.      In or about August 2017, in the Eastern District of Michigan, Southern Division and elsewhere, defendant **SHADY AWAD** did corruptly give, offer and agree to give things of value to **RICHARD SOLLARS**, namely, the refinishing of

a deck at **SOLLARS's** lake house, with the intent to influence and reward **SOLLARS** in connection with a business or transaction of the City of Taylor involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a).

## COUNT TEN
(18 U.S.C. § 666(a) - *Bribery Concerning Programs Receiving Federal Funds*)

### D-1    RICHARD SOLLARS

1.      Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count Ten as if fully set forth herein.

2.      In or about November 2017, in the Eastern District of Michigan, Southern Division and elsewhere, defendant **RICHARD SOLLARS** did corruptly solicit and demand for the benefit of a person, and accepted and agreed to accept things of value, namely, the installation of hardwood flooring in the basement of **SOLLARS's** home, intending to be influenced and rewarded in connection with a business or transaction of the City of Taylor involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a).

## COUNT ELEVEN

(18 U.S.C. § 666(a) - *Bribery Concerning Programs Receiving Federal Funds*)

### D-2   SHADY AWAD

1. Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count Eleven as if fully set forth herein.

2. In or about November 2017, in the Eastern District of Michigan, Southern Division and elsewhere, defendant **SHADY AWAD** did corruptly give, offer and agree to give things of value to **RICHARD SOLLARS**, namely, the installation of hardwood flooring in the basement of **SOLLARS's** home, with the intent to influence and reward **SOLLARS** in connection with a business or transaction of the City of Taylor involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a).

## COUNT TWELVE

(18 U.S.C. § 666(a) - *Bribery Concerning Programs Receiving Federal Funds*)

### D-1   RICHARD SOLLARS

1. Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count Twelve as if fully set forth herein.

2. In or about April 2018, in the Eastern District of Michigan, Southern Division and elsewhere, defendant **RICHARD SOLLARS** did corruptly solicit and demand for the benefit of a person, and accepted and agreed to accept things of value,

namely, a washer and dryer worth over $3,000, intending to be influenced and rewarded in connection with a business or transaction of the City of Taylor involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a).

## COUNT THIRTEEN

(18 U.S.C. § 666(a) - *Bribery Concerning Programs Receiving Federal Funds*)

**D-2  SHADY AWAD**

1. Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count Thirteen as if fully set forth herein.

2.  In or about April 2018, in the Eastern District of Michigan, Southern Division and elsewhere, defendant **SHADY AWAD** did corruptly give, offer and agree to give things of value to **RICHARD SOLLARS**, namely, a washer and dryer worth over $3,000, with the intent to influence and reward **SOLLARS** in connection with a business or transaction of the City of Taylor involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a).

## COUNT FOURTEEN

(18 U.S.C. § 666(a) - *Bribery Concerning Programs Receiving Federal Funds*)

### D-1   RICHARD SOLLARS

1.      Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count Fourteen as if fully set forth herein.

2.      In or about October 2018, in the Eastern District of Michigan, Southern Division and elsewhere, defendant **RICHARD SOLLARS** did corruptly solicit and demand for the benefit of a person, and accepted and agreed to accept things of value, namely, the installation of hardwood flooring in two rooms of **SOLLARS's** home, intending to be influenced and rewarded in connection with a business or transaction of the City of Taylor involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a).

## COUNT FIFTEEN

(18 U.S.C. § 666(a) - *Bribery Concerning Programs Receiving Federal Funds*)

### D-2   SHADY AWAD

1.  Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Count Fifteen as if fully set forth herein.

2.      In or about October 2018, in the Eastern District of Michigan, Southern Division and elsewhere, defendant **SHADY AWAD** did corruptly give, offer and

agree to give things of value to **RICHARD SOLLARS**, namely, the installation of hardwood flooring in two rooms of **SOLLARS's** home, with the intent to influence and reward **SOLLARS** in connection with a business or transaction of the City of Taylor involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a).

## COUNTS SIXTEEN THROUGH THIRTY-THREE
(18 U.S.C. 1343 - *Wire Fraud*)

**D-1 RICHARD SOLLARS**
**D-2 JEFFREY BAUM**

1.      Paragraphs 1 through 6 of the General Allegations are hereby re-alleged and incorporated by reference in Counts Sixteen through Thirty-Three as if fully set forth herein.

2.      Beginning in or about June 2015, and continuing through in or about March 2019, in the Eastern District of Michigan, Southern Division, and elsewhere, defendants **RICHARD SOLLARS** and **JEFFREY BAUM** devised and executed a scheme and artifice to defraud others to obtain money by means of materially false and fraudulent pretenses, representations and promises.  In order to execute the scheme and artifice to defraud, **SOLLARS** and **BAUM** transmitted and caused to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures and sounds.

## The Scheme and Artifice to Defraud

3. It was part of the scheme and artifice to defraud that **SOLLARS** and **BAUM** would falsely represent to the public and to donors that **SOLLARS's** campaign fund, Committee to Elect Richard (Rick) Sollars, Jr., was a legitimate political campaign fund that spent its funds in ways consistent with a political campaign fund. In truth and in fact, as **SOLLARS** and **BAUM** well knew, **SOLLARS** and **BAUM** stole thousands of dollars from the campaign fund and converted the money to **SOLLARS's** own personal use and benefit, contrary to **SOLLARS's** and **BAUM's** representations to the donors.

4. It was part of the scheme and artifice to defraud that **RICHARD SOLLARS** and **JEFFREY BAUM** would hold fundraising events to raise money for **SOLLARS's** campaign fund, at which **SOLLARS** and **BAUM** would falsely represent to donors that the campaign fund spent its funds in ways consistent with a political campaign fund.

5. It was part of the scheme and artifice to defraud that **RICHARD SOLLARS** would take blank campaign fund checks bearing **JEFFREY BAUM's** signature to *Developer A*'s market where **SOLLARS** would cash them and keep the cash for **SOLLARS's** own personal use.

6. It was part of the scheme and artifice to defraud that **RICHARD SOLLARS** would direct *Developer A* to create false invoices for catering services

that had not been provided by *Developer A* in order to conceal the fact that **SOLLARS** was stealing the money from his campaign fund.

7.     It was part of the scheme and artifice to defraud that **JEFFREY BAUM** would instruct *Developer A* about what to include in the false catering invoices.

8.     It was part of the scheme and artifice to defraud that **RICHARD SOLLARS** and **JEFFREY BAUM** would solicit donations from business owners and other individuals by falsely representing that the monies would be used to pay *Developer A* for food catering at events held by **SOLLARS.**   However, the checks did not go to pay for any food catering.  Instead, the donor checks were cashed by *Developer A,* who would give the money back to **SOLLARS** in the form of cash and scratch-off lottery tickets.

9.     It was part of the scheme and artifice to defraud that **JEFFREY BAUM** and **RICHARD SOLLARS** would direct donors to bring checks to *Developer A's* market to ostensibly pay for catering that was never actually provided.

10.     It was part of the scheme and artifice to defraud that **RICHARD SOLLARS** and **JEFFREY BAUM** would create and cause the creation of false invoices and false State of Michigan campaign committee reports that concealed their theft of the campaign fund money.

11.    It was part of the scheme and artifice to defraud that **RICHARD SOLLARS** would solicit and accept cash donations to his campaign fund, which he kept and used for personal expenses.

12.    It was part of the scheme and artifice to defraud that **RICHARD SOLLARS** would conceal the money that he stole through his fraud scheme by hiding over $200,000 in cash in his home.

13.    On or about each of the dates set forth below, in the Eastern District of Michigan, Southern Division, **RICHARD SOLLARS** and **JEFFREY BAUM** did, for the purpose of executing the scheme and artifice to defraud described above, and attempting to do so, knowingly cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures and sounds, with each wire communication constituting a separate count of this indictment.

14.    The following wire communications were made in connection with **RICHARD SOLLARS** cashing campaign fund checks at *Developer A's* market:

| Count | Approximate Date of Wiring | Description of Wiring |
|---|---|---|
| 16 | November 9, 2017 | Check Deposit: **SOLLARS** campaign check no. 1439, dated November 7, 2017; memo: Catering; signed by **JEFFREY BAUM** |
| 17 | December 4, 2017 | Check Deposit: **SOLLARS** campaign check no. 1446, dated December 1, 2017; memo: Employee Holiday Party; signed by **JEFFREY BAUM** |
| 18 | December 19, 2017 | Check Deposit: **SOLLARS** campaign check no. 1451, dated December 15, 2017; memo: Employee Party Food; signed by **JEFFREY BAUM** |
| 19 | January 23, 2018 | Check Deposit: **SOLLARS** campaign check no. 1452, dated December 15, 2017; memo: Catering Super Bowl City Hall; signed by **JEFFREY BAUM** |
| 20 | February 16, 2018 | Check Deposit: **SOLLARS** campaign check no. 1462, dated February 12, 2018; memo: S.O.C. 2018; signed by **JEFFREY BAUM** |

| 21 | July 3, 2018 | Check Deposit: **SOLLARS** campaign check no. 1508, dated June 29, 2018; memo: TSF Sponsors; signed by **JEFFREY BAUM** |
| 22 | January 3, 2019 | Check Deposit: **SOLLARS** campaign check no. 1558, dated January 3, 2019; memo: S.O.C. 2019; signed by **JEFFREY BAUM** |

15.   The following wire communications were made in connection with campaign donors' checks for purported "catering" being cashed at *Developer A's* market:

| Count | Approximate Date of Wiring | Description of Wiring |
| --- | --- | --- |
| 23 | November 2, 2017 | Check Deposit: AA check no. 50311, to *Developer A's* market, dated October 31, 2017 |
| 24 | November 24, 2017 | Check Deposit: AA check no. 50530, to *Developer A's* market, dated November 21, 2017 |
| 25 | December 6, 2017 | Check Deposit: PSG check no. 1051, to *Developer A's* market, dated December 4, 2017 |

| 26 | December 20, 2017 | Check Deposit: VPM check no. 15768, to *Developer A's* market, dated December 8, 2017, memo: City of Taylor Xmas Party Sponsorship |
|---|---|---|
| 27 | December 19, 2017 | Check Deposit: CIS check no. 9175, to *Developer A's* market, dated December 15, 2017, memo: Donation City of Taylor |
| 28 | December 21, 2017 | Check Deposit: VPM check no. 15780, to *Developer A's* market, dated December 18, 2017, memo: Donation Xmas Party Sponsorship |
| 29 | October 22, 2018 | Check Deposit: AA check no. 52641, to *Developer A's* market, dated October 19, 2018 |
| 30 | October 22, 2018 | Check Deposit: PSG check no. 1314, to *Developer A's* market, dated October 19, 2018 |
| 31 | October 25, 2018 | Check Deposit: MRS check no. 2786, to *Developer A's* market, dated October 23, 2018, memo: Donation |
| 32 | October 26, 2018 | Check Deposit: ED check no. 1139, to *Developer A's* |

| | | |
|---|---|---|
| | | market, dated October 23, 2018. |
| **33** | November 16, 2018 | Check Deposit: VPS check no. 15859 to *Developer A*, dated November 13, 2018; memo: Sponsorship Xmas party IO & [P] Development |

All in violation of Title 18, United States Code, Section 1343.

## **FORFEITURE ALLEGATIONS**

(18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) – *Criminal Forfeiture*)

1.     The allegations contained in the General Allegations and in Counts One through Thirty-Three of this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture under Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     Under Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of a violation of Title 18, United States Code, Section 666, Title 18, United States Code, Section 1343 and/or a conspiracy to violate section 666, in violation of Title 18, United States Code, Section 371, the defendants, **RICHARD SOLLARS, SHADY AWAD,** and **JEFFREY BAUM** shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from

proceeds traceable to said violations. The property to be forfeited includes, but is not limited to, the following:

- $205,993.00 in U.S. Currency seized in Taylor, Michigan on or about February 19, 2019;

- Real property located at 22190 Hunter Circle North, Taylor, Wayne County, Michigan 48180 more fully described as:
Lot 43, FOX CHASE SUBDIVISION, according to the plat thereof as recorded in Liber 114, Pages 22, 23, and 24, of Plats, Wayne County Records.

  PARCEL ID: 60-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-000

- Real property located at 264 Harris, Cement City, Lenawee County, Michigan 49233 more fully described as:

  Lot No. 4, Silver Lake Grove, according to the plat thereof as recorded in Liber 16 of Plats, Page 11, Lenawee County Records.

  TAX PARCEL ID: WD0-6750040-00

3. **Money Judgment.** The United States also intends to seek a forfeiture money judgment for the total amount of proceeds that each defendant obtained as a result of the charged violations. Such sum in aggregate is property representing the proceeds of violations of Title 18, United States Code, Sections 371, 666, and 1343, or property that is traceable to such property.

4. **Substitute Assets.** Under Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendants shall forfeit substitute property, up to the value of the property described above, if, as a result of any act or omission of the defendants, any of the property described

above: cannot be located upon the exercise of due diligence; has been transferred or

sold to, or deposited with, a third party; has been placed beyond the jurisdiction of

the court; has been substantially diminished in value; or has been commingled with

other property which cannot be divided without difficulty.

THIS IS A TRUE BILL.

s/Grand Jury Foreperson
GRAND JURY FOREPERSON

MATTHEW SCHNEIDER
United States Attorney

s/David A. Gardey
DAVID A. GARDEY
Assistant United States Attorney
Chief, Public Corruption Unit

s/R. Michael Bullotta
R. MICHAEL BULLOTTA
Assistant United States Attorney

s/Dawn N. Ison
DAWN N. ISON
Assistant United States Attorney

Dated: December 18, 2019

| United States District Court<br>Eastern District of Michigan | Criminal Case Co | Case:2:19-cr-20836<br>Judge: Goldsmith, Mark A.<br>MJ: Stafford, Elizabeth A.<br>Filed: 12-18-2019 At 11:06 AM<br>USA V SEALED MATTER (LG) |

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it a

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based on LCrR 57.10(b)(4)[1]: | |
| ☐Yes ☑No | AUSA's Initials: |

**Case Title:**     USA v.  Richard Sollars, et al

**County where offense occurred:**     Wayne

**Offense Type:**     Felony

**Indictment -- no prior complaint**

## Superseding Case Information

**Superseding to Case No:** _____     **Judge:** _____

**Reason:**

| Defendant Name | Charges | Prior Complaint (if applicable) |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case**

December 18, 2019
Date

R. Michael Bullotta
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
michael.bullotta@usdoj.gov
(313) 226-9507

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence.  Cases may be companion cases even though one of them may have already been terminated.