UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| United States of America, | |
| Plaintiff, | Case No. 19-20836 |
| v. | Honorable Mark A. Goldsmith |
| Richard Sollars, | |
| Defendant. | |

## MOTION TO SUPPRESS EVIDENCE

The government intends to use evidence derived from search warrants against Defendant Richard Sollars at his upcoming trial. Those warrants were based on the uncorroborated statements of an unknown, unreliable confidential informant. The affidavits supporting both warrants lacked probable cause. Moreover, the warrant authorizing the search of Sollars's iCloud account (and the accounts of two other people) contained no nexus between the criminal allegations and the accounts to be searched. And the iCloud warrant was overbroad. Pursuant to Loc.R. 7.1(a) and this Court's standing Order, the undersigned counsel certifies that counsel personally spoke to counsel for the government, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel thereafter expressly denied concurrence.

Accordingly, all evidence against Sollars derived from the two search warrants must be suppressed.

For the reasons set forth in the attached brief in support of this motion, all evidence derived from the iCloud Warrant and the Residential Warrant must be suppressed.

Dated: May 3, 2023                    Respectfully submitted,

                                      */s/ Kevin M. Mulcahy*
                                      Kevin M. Mulcahy (MI: P86618)
                                      Attorney for Richard Sollars
                                      Flannery | Georgalis, LLC
                                      719 Griswold, Suite 280
                                      Detroit, MI 48226
                                      313-488-0147
                                      KMulcahy@flannerygeorgalis.com

                                      */s/ Todd F. Flood*
                                      Todd F. Flood (MI: P58555)
                                      Attorney for Richard Sollars
                                      155 W. Congress, Suite 603
                                      Detroit, MI 48226
                                      (248) 547-1032
                                      tflood@floodlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2023, a copy of this motion was filed electronically. Notice will be sent to all the parties to this action through the Court's CM/ECF system.

*/s/ Kevin M. Mulcahy*
Kevin M. Mulcahy

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

              Plaintiff,            Case No. 19-20836

      v.                     Honorable Mark A. Goldsmith

Richard Sollars,

              Defendant.

---

## BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE

---

Las Vegas may be Sin City, but it's not a crime to go there. Yet, the Government anchored two search warrant affidavits against Defendant Richard Sollars on innocuous trips he took to Vegas with friends and his use of the world's most popular text messaging application. They relied on these innocent facts to corroborate the vague statements of an anonymous tipster who was neither credible nor reliable. The first search warrant affidavit recounted the Vegas trips with conclusory statements about a bribery scheme in order to justify searches of Sollars's iCloud account. The second search warrant affidavit then used information derived from the iCloud account to justify searches of Sollars's residences and cellphone.

The iCloud Warrant is defective in at least three ways. Most obviously, it is devoid of probable cause that any crime took place. The FBI did not identify the

informant as either reliable or credible. Without such a declaration as to the cooperator's reliability, courts require substantial police corroboration. But there was none here. The FBI did not even attempt to corroborate CW's allegations, instead relying on irrelevant facts to support the informant. Beyond lacking probable cause, the iCloud search warrant contained no nexus between the facts alleged (slight as they were) and the location to be searched. This lack of nexus dooms the warrant. Finally, the iCloud warrant is stunningly overbroad. It contains no limitation as to the information to be seized or the time period to be reviewed. Instead, it is akin to the general warrants prohibited by the Constitution.

The FBI then used electronic communications obtained from the iCloud warrant in the residential search warrants. But the fruit from the iCloud warrant was poison, and therefore could not be used in the subsequent warrants. Once the electronic communications are stripped from the affidavits for the residential warrants, no probable cause of criminal activity remains. Therefore, the residential warrants lack probable cause for the same reasons as the iCloud warrants.

Accordingly, all evidence against Sollars derived from the two search warrants must be suppressed.

# TABLE OF CONTENTS

I.     FACTUAL BACKGROUND.............................................................................1

       A.      The iCloud Warrant and Affidavit .......................................................1

       B.      The Residential and Cell Phone Warrants and Affidavit.....................6

II.    THE LAW ..........................................................................................................8

III.   THE iCLOUD WARRANT LACKS PROBABLE CAUSE AS
        WELL AS A SUFFICIENT NEXUS BETWEEN THE CRIMINAL
        ACTIVITY ALLEGED AND THE PLACE TO BE SEARCHED..............10

       A.      The iCloud Warrant Lacks Probable Cause ......................................11

       B.      The iCloud Warrant Lacks Nexus......................................................16

       C.      The iCloud Warrant Is Overbroad.....................................................17

       D.      Good Faith Cannot Save the iCloud Warrant ...................................22

IV.   THE RESIDENTIAL WARRANT LACKS PROBABLE CAUSE.............24

V.     CONCLUSION.................................................................................................30

— iii —

# TABLE OF AUTHORITIES

**Cases**

*DePierre v. United States,* 564 U.S. 70 (2011)........................................................15

*Draper v. United States*, 358 U.S. 307 (1959)........................................................14

*Illinois v. Gates*, 462 U.S. 213 (1983) .................................................. 8, 14

*Marron v. United States*, 275 U.S. 192 (1927)........................................21

Nix v. Williams, 467 U.S. 431 (1984) ......................................................24

*Spinelli v. United States*, 393 U.S. 410 (1969) .........................................8

*United States v. $92,422.57*, 307 F.3d 137 (3d Cir. 2002) ......................................21

*United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006)..........................................20

*United States v. Bah*, 794 F.3d 617 (6th Cir. 2015)........................................ 25, 28

*United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009) .....................................19

*United States v. Carpenter*, 360 F.3d 591 (6th Cir. 2004)......................... 10, 16, 23

*United States v. Castro*, 881 F.3d 961 (6th Cir. 2018) ............................................21

*United States v. Christie*, 717 F.3d 1156 (10th Cir. 2013) .....................................18

*United States v. Christine*, 687 F.2d 749 (3d Cir. 1982) .................................. 17, 21

*United States v. Evers*, 559 F.3d 645 (6th Cir. 2012) ..............................................18

*United States v. Ford*, 184 F.3d 566 (6th Cir. 1999) ..............................................20

*United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005) .......................... 9, 10, 12, 29

*United States v. Hammond*, 351 F.3d 765 (6th Cir. 2003) ......................................15

*United States v. Helton*, 314 F.3d 812 (6th Cir.2003) ..............................................9

*United States v. Higgins*, 557 F.3d 381 (6th Cir. 2014) ..........................................15

*United States v. Hudson*, 543 F.3d 286 (6th Cir. 2008)................................ 9, 22, 29

*United States v. Jenkins*, 396 F.3d 751 (6th Cir.2005) ...................................... 8, 25

*United States v. Kow*, 58 F.3d 423 (9th Cir. 1995).....................................18

*United States v. Laughton*, 409 F.3d 744 (6th Cir. 2005)................................. 17, 30

*United States v. Leake*, 95 F.3d 409 (6th Cir. 1996) .....................................24

*United States v. Leon*, 468 U.S. 897 (1984) ..................................... passim

*United States v. Leveto*, 540 F.3d 200 (3d Cir. 2008) .............................................17

*United States v. Mann*, 592 F.3d 779 (7th Cir. 2010)....................................18

*United States v. Maxwell*, 920 F.2d 1028 (D.C. Cir. 1990)....................................19

*United States v. Neal,* 577 F. App'x. 434 (6th Cir. 2014) ......................... 14, 15, 16

*United States v. Powell*, 603 F. App'x. 475 (6th Cir. 2015)....................................9

*United States v. Richards*, 659 F.3d 527 (6th Cir. 2011).......................................18

*United States v. Sanders*, 59 F.4th 232 (6th Cir. 2023) ...........................................30

*United States v. Stabile*, 633 F.3d 219 (3d Cir. 2011) .............................................21

*United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996)...........................................17

*United States v. Weaver*, 99 F.3d 1372 (6th Cir.1996)...........................................16

*United States v. Wey*, 256 F.Supp.3d 355 (S.D.N.Y 2017) ....................................20

*United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017).................. 10, 22, 23, 26

*United States v. Williams*, 224 F.3d 530 (6th Cir. 2000)........................................10

*United States v. Woosley*, 361 F.3d 924 (6th Cir.2004) .................................... 9, 16

*United States v. Wright*, 131 F. App'x. 471 (6th Cir. 2005)....................................25

*United States v. Zemlyanski*, 945 F. Supp. 2d 438 (SDNY 2013)..........................18

*Utah v. Strieff*, 579 U.S. 232 (2016) .........................................................................9

*Weeks v. United States*, 232 U.S. 383 (1914) ...........................................................9

*Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560 (1971) ........................8

*Wong Sun v. United States*, 371 U.S. 471 (1963) ....................................................24

*Zurcher v. Stanford Daily*, 436 U.S. 547 (1978) ....................................................16

**Other Authorities**

Ceci, L., *Daily Active Users of WhatsApp Status 2019* ..................................... 5, 14

U.S. Const. Amend. IV ............................................................................................8

**Rules**

31 C.F.R. § 1021.311 ...............................................................................................3

31 C.F.R. § 1021.313 ...............................................................................................3

## I.    FACTUAL BACKGROUND

### A.    The iCloud Warrant and Affidavit

In September 2018, the Government applied for and received search warrants to seize three Apple iCloud accounts, including one belonging to Defendant Richard (Rick) Sollars, the former mayor of the City of Taylor. Those search warrants were based on an affidavit (the "iCloud Affidavit") authored by an FBI agent who had been on the job for about 11 months. The iCloud Affidavit's probable cause statement relied on three pieces of information: (1) statements of a cooperating witness; (2) trips to Las Vegas; and (3) the use of the text application WhatsApp.

*The Cooperating Witness.* The iCloud Affidavit starts with statements of a cooperating witness, who the affidavit identifies as CW. CW "provided information alleging criminal activity by" Sollars and a local contractor named Shady Awad. (Ex. A: iCloud Warrant, ¶ 14). Awad ran a business that purchased, renovated, and resold tax-foreclosed homes in Taylor. (*Id.* at ¶¶ 11-13). CW alleged that Awad paid for a condo, a vacation home, new flooring, and other home renovations for Sollars as part of a "pay-to-play, *quid pro quo* scheme in return for contracts for tax-foreclosed homes." (*Id*. at ¶ 14). Besides confirming that Sollars and Awad once traveled to Las Vegas together, CW is never mentioned again in the iCloud Affidavit. The affiant does not claim that CW is reliable, credible, or had previously provided honest information to law enforcement. The iCloud Affidavit does not suggest how

CW came to know about this alleged illegal scheme, when (and for how long) CW observed illegal activity, or how Sollars and Awad communicated with one another to conduct their alleged crimes.

Nor does the affidavit attempt to corroborate CW's allegations. This is true even for easily verifiable information. For example, the affidavit says nothing about whether Sollars even has a condo or a vacation home. The iCloud Affidavit provides no financial information, such as bank records, mortgage information, or other data about Sollars's ability to afford (or not afford) additional properties. Similarly, the affidavit contains no bank record analysis or financial workup on Awad. The affidavit fails to explain how these additional properties (to the extent they exist at all) were financed. As to CW's claims of new flooring and other home improvement projects, the iCloud Affidavit again provides no details about when, how, or by whom such renovations were made. Finally, the affidavit is silent regarding how much business Awad allegedly obtained from the City of Taylor to explain why he would "pay to play" with Sollars in the first place.

*Trips to Las Vegas*. Both the cooperating witness and a second confidential informant (who the iCloud Affidavit calls CHS-1) allege that Sollars and Awad traveled to Las Vegas together in February 2018. (Ex. A: iCloud Warrant, ¶¶ 15-17). CHS-1 also knew of another trip to Las Vegas, back in November 2016, involving Sollars and two others (but not Awad). (Ex. A: iCloud Warrant, ¶¶ 18-19). Notably,

— 2 —

neither CW nor CHS-1 claim that the Vegas trips had anything to do with the bribery

scheme. In fact, CHS-1 does not allege *any* criminal activity by Sollars or anyone

else.[1]

The iCloud Affidavit later sets out a third Las Vegas trip, from March 2017,

with Sollars and a former employee of now-disgraced local businessman Gasper

---

[1] The iCloud Affidavit also sets forth Currency Transaction Reports (CTRs) for two of these Las Vegas trips, presumably to show Sollars was in Las Vegas during those 2016, 2017, and 2018 trips. (Ex. A: iCloud Aff. ¶¶ 17, 28). Those CTRs suggest Sollars spent an eye-popping amount of money gambling. But the truth is much less interesting. The IRS requires casinos to file CTRs whenever an individual player puts more than $10,000 into electronic gaming machines in the course of a single day. *See* 31 C.F.R. § 1021.311(a)(9) and 31 C.F.R. § 1021.313 ("In the case of a casino, multiple currency transactions shall be treated as a single transaction if the casino has knowledge that they are by or on behalf of any person and result in either cash in or cash out totaling more than $10,000 during any gaming day."). By requiring the casinos to aggregate the amount of money put into machines on any given day, the regulations result in CTRs being issued for individuals who spend far less than $10,000 gambling. For example, assume a gambler puts $1,000 into a video poker machine and plays several hands. If that same player changes machines a few times over the course of a gambling session (as the superstition and habits of gamblers at casinos often dictate), he would have inserted about $3,000 into machines. Yet our gambler did not spend $3,000 of his own money. If that same gambler repeated this pattern of gambling activity a few times each day—depending on luck, timing, and other events planned for that day—the casino would be required to issue a CTR for the player's submission of more than $10,000 into gaming machines in a single day. This would be true whether the player was lucky that day and made more than the $1,000 initial investment, or whether the player was unlucky and had to replenish his gambling hand a few times. Either way, the gambler did not spend over $10,000 of his own money. But the iCloud Affidavit does not disclose this simple math, the IRS regulations regarding CTRs, or anything else related to Sollars's gambling activity. Instead, it leaves the misleading impression that Sollars spent $50,000 gambling during the February 2018 Las Vegas weekend trip.

Fiore. (Ex. A: iCloud Warrant, ¶¶ 26-28). The iCloud Affidavit claims that Fiore paid for the airline tickets but fails to mention any other details about the trip such as who paid for the hotel rooms, dinners, or other expenses, and whether Sollars paid for these items to reimburse Fiore or his company for the airline tickets. What is clear from the affidavit, however, is that Fiore had "no business partnership with Sollars" and "had never given Sollars anything that he would describe as 'this for that.'" (Ex. A: iCloud Warrant, ¶ 25).[2]

*Use of WhatsApp.* The iCloud Affidavit then highlights that Sollars used WhatsApp to communicate with others. (Ex. A: iCloud Warrant, ¶¶ 30-32). The FBI agent learned this through two pen registers that show only the use of WhatsApp by Sollars and others. The iCloud Affidavit acknowledges that the FBI received no content from the pen registers, yet somehow makes the claim that the mere use of WhatsApp "is an attempt to conceal the nature of those communications from scrutiny by law enforcement and the public." (Ex. A: iCloud Warrant, ¶ 33). There is no reason given for this suspicion, except the agent's "training and experience." Again, the agent had been in law enforcement for less than one year. (*Id.* at ¶ 3). Moreover, WhatsApp is enormously popular. "With over 1.5 billion monthly active

---

[2] The iCloud Affidavit contains a single paragraph where Fiore apparently recalled "a couple of times" giving Sollars "a few hundred dollars at a golf outing or similar event." (Ex. A: iCloud Warrant, ¶ 24). There is no timeframe given for these vague recollections and certainly no information suggesting that this had anything to do with either Awad or the iCloud accounts that were the subject of the warrant.

users, WhatsApp is the most popular mobile messenger app worldwide. As of 2019, the chat app had an estimated 68 million users in the United States." Ceci, L., *Daily Active Users of WhatsApp Status 2019,* (Dec. 9, 2021), published at www.statista.com (last visited April 12, 2023). Despite its popularity, the affiant contends that "the volume of the communications via WhatsApp by Sollars, Awad, and Dickerson, shows that it is likely that they use WhatsApp to communicate bribes and other evidence of the pay-to-play scheme described here in a manner to avoid detection through the encrypted nature of the WhatsApp communications." (Ex. A: iCloud Warrant, ¶ 46).

In sum, the iCloud Affidavit rests probable cause on uncorroborated allegations by an unknown informant coupled with the fact that Sollars went to Las Vegas three times in three years with three different groups of people and used WhatsApp to communicate with others. With those facts, the iCloud Affidavit speculatively concludes that the information contained within the iCloud account "may provide direct evidence of" bribery. (Ex. A: iCloud Warrant, ¶ 37). The iCloud Affidavit provides no other details suggesting that the alleged bribery scheme relied on electronic communications (as opposed to in person meetings) or why evidence of the scheme would be found in the iCloud. Despite these shortcomings, the warrant permits a boundless search of the iCloud accounts for all records of identification, all files, all emails, all electronic communications, all photos, all records stored on

the iCloud, activity logs, transactional logs, connection logs, and location information. (Ex. A: iCloud Warrant, Attachment B). The iCloud Warrant compelled Apple to provide the entirety of the iCloud account without any time or content restriction. (*Id*.).

**B.      The Residential and Cell Phone Warrants and Affidavit**

The FBI then used information obtained from the iCloud Warrant in a subsequent search warrant affidavit justifying the search of seven physical locations and seven cellular telephones (the "Residential Affidavit"). (Ex. B: Residential Warrant). The Residential Affidavit—authored by a different FBI agent who also had less than one year experience—included the same justification as the iCloud Affidavit. Like its predecessor, the Residential Affidavit relied on the statements of CW that Awad and Sollars were engaged in illegal activity. (Ex. B: Residential Warrant, ¶ 27). To corroborate CW, the Residential Affidavit set forth seven pieces of information: (1) three trips to Las Vegas by Sollars and others; (2) Sollars's use of WhatsApp; (3) Awad's purchase of a cigar humidor for the City of Taylor; (4) work performed at Sollars's Lake House and Residence; (5) alleged bribes paid by someone unrelated to Awad; (6) the fixing of traffic tickets for Awad by someone other than Sollars; and (7) allegedly suspicious contributions to Sollars's re-election campaign. (Ex. B: Residential Warrant, ¶¶ 28-84)

— 6 —

The Las Vegas Trips and the use of WhatsApp sections mostly mirror the information provided in the iCloud Affidavit. But whereas the iCloud Affidavit listed the number of WhatsApp messages between the various targets of the investigation (based on information obtained from a pen registry), the Residential Affidavit listed no details about those communications. And the Residential Affidavit included in his justification for the search of the cellphones that a warrant for the phones is "likely the only way to discover if evidence of the TARGET OFFENSES exists in the content of the messages." (Ex. B: Residential Warrant, ¶ 44). But later in the Residential Affidavit, the same affiant recounts his review of many WhatsApp messages among the targets of the investigation. (*Id.* at ¶¶ 55, 57, 58). Thus, the agent claimed to need the cellphone warrant to obtain WhatsApp messages but already had these same WhatsApp messages from the iCloud Warrant.

The remaining five segments of the Residential Affidavit (with one minor exception) all rely entirely on electronic communications obtained from the iCloud Warrant. (Ex. B: Residential Warrant, ¶¶ 46-84). For example, the information about the humidor, home improvement projects to Sollars's residence, fixing of traffic tickets (unrelated to Sollars), and campaign contributions involve no independent investigation by the FBI, but rather merely recite electronic communications obtained from iCloud accounts. The information about alleged bribes paid by local businessman Philip Sakalian involves both messages from the iCloud account and

information from another confidential source. But like the other sources relied upon by the FBI in this case, there is no claim that the informant is reliable or credible, and no attempt was made to corroborate the tipster's allegations.

## II.   THE LAW

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched . . ." U.S. CONST. AMEND. IV. To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir.2005) (citations omitted). Courts must review the probable cause standard under the totality of the circumstances, *see Illinois v. Gates*, 462 U.S. 213, 230 (1983), but limited to the statements contained within the four corners of the affidavit. *See Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971). The preference for warrants has led the Supreme Court to declare that issuing magistrate's probable cause determinations deserve "great deference." *Spinelli v. United States*, 393 U.S. 410, 419 (1969). "Deference to the magistrate, however, is not boundless." *United States v. Leon*, 468 U.S. 897, 914 (1984).

Special considerations apply to affidavits that depend on the statements of confidential informants. When confronted with hearsay information from a

confidential informant, "a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information ...." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir.2003). "[I]n the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (citing *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir.2004), among other authorities).

And where the affidavit underlying the search warrant fails to meet the probable cause or nexus standards, "courts ordinarily must suppress evidence obtained pursuant to the invalid search warrant. This rule is called the exclusionary rule." *United States v. Powell*, 603 F. App'x. 475, 476 (6th Cir. 2015) (citing *Davis v. United States*, 564 U.S. 229, 236-37 (2011)). The Supreme Court created the exclusionary rule as the "principal judicial remedy" for Fourth Amendment violations by federal officers. *Utah v. Strieff*, 579 U.S. 232 (2016); *see also Weeks v. United States*, 232 U.S. 383, 398 (1914).

The Supreme Court carved out an exception to the exclusionary rule where law enforcement reasonably relied on a subsequently invalidated warrant in good faith. *See Leon*, 468 U.S. at 920-21. But that exception does not apply where "'the warrant was so lacking in indicia of probable cause' as to render official belief in its existence unreasonable." *United States v. Hudson*, 543 F.3d 286, 292 (6th Cir. 2008)

(quoting *Leon*, 468 U.S. at 923). Affidavits with such a lack of probable cause are often called "bare bones." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). "A bare-bones affidavit, in turn, is commonly defined as one that states only suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Id.* (citations and quotations omitted). "Put more simply, a bare-bones affidavit is a conclusory affidavit, one that asserts 'only the affiant's belief that probable cause existed.'" *Id.* (quoting *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000)). "It provides nothing more than a mere 'guess that contraband or evidence of a crime would be found,' or 'so vague as to be conclusory or meaningless." *Id.* (quoting *United States v. Carpenter*, 360 F.3d 591, 595-96 (6th Cir. 2004) (en banc), and *Frazier*, 423 F.3d at 526, 536).

Against this backdrop, the evidence obtained from both the iCloud Warrant and the Residential Warrant must be suppressed.

## III.   THE iCLOUD WARRANT LACKS PROBABLE CAUSE AS WELL AS A SUFFICIENT NEXUS BETWEEN THE CRIMINAL ACTIVITY ALLEGED AND THE PLACE TO BE SEARCHED

The iCloud Affidavit fails to establish probable cause that any crime took place, fails to show evidence of the crimes mentioned in that Affidavit would be found within Sollars's iCloud account, and is breathtakingly overbroad. The Residential Affidavit—with the information from the iCloud Warrant extracted—

— 10 —

likewise contains no probable cause justifying the search of Sollars's homes or cellular telephone. Finally, given the dearth of facts justifying the warrants, neither can be saved by the good faith exception.

### A.     The iCloud Warrant Lacks Probable Cause

The iCloud Affidavit's probable cause statement depends almost exclusively on a vague, conclusory claim made by a cooperating witness (hereinafter "CW"). The allegations of wrongdoing are contained entirely within paragraph 14 of the iCloud Affidavit, which states:

> 14.   In April 2018, a cooperating witness (CW) who is a former employee of AWAD and REALTY TRANSITION, provided information alleging criminal activity by AWAD and SOLLARS. The CW alleged that AWAD paid for, or partially paid for, a condo and a vacation home owned by SOLLARS. The CW also alleged that AWAD paid for new flooring and other renovations to SOLLARS' home as part of a pay-to-play, *quid pro quo* scheme in return for the contracts for tax-foreclosed homes.

(Ex. A: iCloud Warrant, ¶ 14). CW provided no further details. For example, CW did not identify when (and for how long) the scheme took place, who else was involved, how much business Awad obtained as a result of the plot, or how much money Sollars received/Awad paid as part of the alleged bribery activity. CW did not even provide an anecdote about the pay-to-play scheme he alleged. Moreover, CW's allegations contain no suggestion that the pair used electronic communications to conduct this illegal conduct. In fact, CW's only contribution outside of paragraph 14 of the affidavit is a statement that Awad and Sollars traveled to Las Vegas

together during the 2018 Super Bowl. (*Id.* at ¶ 15). And CW does not contend that this trip had anything to do with the criminal activity alleged.

Importantly, the iCloud Affidavit does not claim that CW is reliable or credible. It contains no "averments about the reliability of the information provided by the anonymous informant[] in the past, there are no averments about the length of relationship between [the FBI Agent] and the confidential informant[], and there is no suggestion that [the FBI Agent] disclosed the informant's true identit[y] to the issuing magistrate." *Frazier*, 423 F.3d at 532.

With no "indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." *Id*. But the iCloud Affidavit contains no police corroboration of criminal activity at all. The affidavit does not corroborate even the most basic information, such as whether Sollars has a condo, a vacation home, or new flooring, or how much business Awad's company does with the City of Taylor to justify paying such extravagant bribes. Instead, the affidavit attempts to corroborate CW's claims by recounting only innocent, unrelated conduct in the form of Sollars's trips to Las Vegas and the use of the text messaging application WhatsApp. Specifically, the affidavit says that "Sollars and Awad were together in Las Vegas during Super Bowl 2018." (Ex. A: iCloud Warrant, ¶ 17). The Affidavit does not claim that the Las Vegas Super Bowl trip had anything to do with CW's allegations of a pay-to-play scheme. It does not allege that Awad paid for the

trip, gave Sollars money during the trip, or otherwise engaged in criminal activity with Sollars while there. The iCloud Affidavit then recounts two other Las Vegas trips, one in 2016 and one in 2017, that Sollars took without Awad. (*Id.* at ¶¶ 18-19, 26, 28). As with the 2018 Las Vegas trip, there is no allegation that these other Las Vegas trips had anything to do with CW's unsubstantiated allegations of a quid pro quo bribery relationship between Sollars and Awad (or anybody else for that matter).

As for WhatsApp, the iCloud Affidavit contains no factual information that Sollars and Awad used WhatsApp to conduct the criminal activity alleged by CW. CW does not make that claim. No other witness makes that claim. Instead, the FBI Agent concluded that, based on his training and experience, the mere use of WhatsApp was "an attempt to conceal the nature of [his] communications from scrutiny by law enforcement and the public," and that "the volume of communications via WhatsApp . . . shows that it is likely that [Sollars and Dickerson] use WhatsApp to communicate bribes and other evidence of the pay-to-play scheme." (*Id.* at ¶¶ 33, 46). But the affiant's training and experience were minimal as he had been with the FBI for just 11 months. The rookie FBI agent did not even attempt to buttress his lack of experience with any meaningful statistics or personal anecdotes. He did not say, for example, that a significant percentage of public corruption investigations involve WhatsApp users. Nor did he claim that WhatsApp served some important role in cases he specifically has worked. That is

likely because neither are true. As indicated above, 68 million Americans and more than 1.5 billion people worldwide use WhatsApp. *See supra* Ceci, L., *Daily Active Users of WhatsApp Status 2019*. Clearly, they cannot all be criminals.

The Sixth Circuit has cautioned against the use of non-incriminating facts to support the allegations of an anonymous informant. *See United States v. Neal,* 577 F. App'x. 434, 445 (6th Cir. 2014). This is especially true where, as here, the facts provided have nothing to do with the criminal allegations. And where courts have found corroboration of innocent facts to be sufficient to uphold the statements of an anonymous tipster, that corroboration involved information about future activity such that the police could "'personally verif[y] every facet of the information' contained in the tips as the events unfolded, prior to seeking a search warrant." *Id*. (quoting *Gates,* 462 U.S. at 242-44 and distinguishing *Draper v. United States*, 358 U.S. 307, 313 (1959)). Here, as in *Neal*, CW "did not provide any information regarding future events that agents could verify through independent observation to bolster the reliability of the rest of [CW's] statements." *Neal*, 577 F. App'x. at 446. Thus, the iCloud Affidavit's attempt to weaponize innocent facts to bolster CW's credibility fails.

Other affidavits with significantly more detailed corroboration of an anonymous tipster's statements than that found in the iCloud Affidavit have been rejected by the Sixth Circuit. *See United States v. Higgins*, 557 F.3d 381, 390 (6th

— 14 —

Cir. 2014), *overruled on other grounds by DePierre v. United States,* 564 U.S. 70, 79 (2011), (finding insufficient corroboration of an informant where the corroboration was that the defendant lived at a particular location, owned a motorcycle, and had a drug-related criminal history); *United States v. Hammond*, 351 F.3d 765, 768-69, 773 (6th Cir. 2003) (finding insufficient corroboration where the affiant verified the defendant's address and the details provided about the exterior of the home, and independently learned the following information that confirmed the informant's statements: (1) numerous complaints had been made regarding a potential marijuana growing operation at the defendant's residence, (2) an unusually high amount of power consumption was coming from what was listed as a second building on the defendant's property, and (3) results of an Aerial Thermal Image scan of defendant's property were consistent with other indoor growing operations investigated by the affiant); *Neal,* 577 F. App'x. at 446 (finding no probable cause based on statements of an anonymous tipster where the corroboration involved alleged drug trips, prior convictions for cocaine-related offenses, and surveillance of an alleged drug house).

In sum, "where an affidavit substantially relies on hearsay statements provided by a confidential informant, probable cause for a warrant to issue depends on whether the reliability of the informant or sufficient independent police corroboration of the informant's statements can be found within the four corners of

the affidavit." *Neal*, 577 F. App'x. at 441 (citing *United States v. Woosley*, 361 F.3d 924, 926–27 (6th Cir.2004), and *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir.1996)). Because the iCloud Affidavit lacks any statement about the reliability of CW, and there is no police corroboration of CW's allegations, the affidavit lacks probable cause. All evidence derived from that warrant must therefore be suppressed.

### B.    The iCloud Warrant Lacks Nexus

There must be "a nexus between the place to be searched and the evidence to be sought." *Carpenter*, 360 F.3d at 594 (quotation omitted). "The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

Here again, the iCloud Affidavit fails. The affidavit does not claim that Sollars and Awad conducted this alleged bribery scheme using electronic means such that evidence would be saved in their respective iCloud accounts. CW provided no details regarding the methods of communication, electronic or otherwise, between Sollars and Awad. In fact, only the unsupported conclusions of the affiant connect the iCloud accounts and the crimes being investigated. The affiant said the mere use of WhatsApp "is an attempt to conceal the nature of those communications from

scrutiny by law enforcement and the public," and that "the volume of the communications via WhatsApp . . . shows that it is likely that they use WhatsApp to communicate bribes and other evidence of the pay-to-play scheme described here in a manner to avoid detection through the encrypted nature of the WhatsApp communications." (Ex. A: iCloud Warrant, ¶¶ 33, 46). These speculative claims came from the agent's "training and experience." But with less than one year in law enforcement and a lack of any explanation about this experience, the affiant's conclusions cannot bear the weight placed upon them.

The Sixth Circuit has rejected affidavits based on law enforcement's "suspicions, beliefs, or conclusions." *See United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)) (referring to such warrants as "bare bones"). With no connection between the vague assertions by CW and the use of electronic communications, the iCloud Affidavit fails to state a sufficient nexus required by the Fourth Amendment.

### C.    The iCloud Warrant Is Overbroad

A search warrant may be no broader than the probable cause that underlies it. *See United States v. Leveto*, 540 F.3d 200, 211 (3d Cir. 2008) (quoting *United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982)) (a warrant is unconstitutionally general if "it can be said to 'vest the executing officer with unbridled discretion to conduct an exploratory rummaging … in search of criminal evidence'"); *United*

*States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (warrant "not sufficiently particular" because the "government did not limit the scope of the seizure to a time[ ] frame within which the suspected criminal activity took place"); *United States v. Zemlyanski*, 945 F. Supp. 2d 438, 454 (SDNY 2013) (courts "have found warrants for the seizure of records constitutionally deficient where they imposed too wide a time frame or failed to include one altogether."). And where electronic information is concerned, time limitations are one of the easiest ways to ensure a search warrant's breadth is not unreasonable. Small wonder then that courts have rejected warrants that contain "no limiting principle" to restrict what officers may do with the data they gather. *See United States v. Christie*, 717 F.3d 1156, 1164–65 (10th Cir. 2013).

The Sixth Circuit has recognized that defining the proper scope of searches for electronic data is challenging. This is true because evidence "could be nearly anywhere on the computers. Unlike a physical object that can be immediately identified as responsive to the warrant or not, computer files may be manipulated to hide their true contents." *United States v. Richards*, 659 F.3d 527, 538 n. 8 (6th Cir. 2011) (quoting *United States v. Mann*, 592 F.3d 779, 782 (7th Cir.2010)). Thus, rather than implementing specific search methodologies, the Sixth Circuit has "employed the Fourth Amendment's bedrock principle of reasonableness on a case-by-case basis." *United States v. Evers*, 559 F.3d 645, 653 (6th Cir. 2012). Thus, "officers must be clear as to what it is they are seeking on the computer and conduct

the search in a way that avoids searching files of types not identified in the warrant."
*Id.* (quoting *United States v. Burgess*, 576 F.3d 1078, 1092 (10th Cir. 2009)).

Here, the iCloud Warrant suffers from two distinct overbreadth problems.
First, the warrant allows for the search and seizure of all information contained in
the targeted iCloud accounts: all records about the user; all emails; all electronic
messages; all files stored on the iCloud; all photos; all activity logs; all connection
logs; and all records about the services used. (Ex. A: iCloud Warrant, Attachment
B). There is no meaningful limitation to the scope of the search. The only attempt to
limit the search is that the warrant authorizes seizure of "fruits, evidence and/or
instrumentalities of violations of the Target Offenses." (*Id.*). But the Target Offenses
include mail fraud, wire fraud, money laundering, and tax evasion, which is
essentially no limitation at all. Several courts have held that "[a]lthough
a warrant's reference to a particular statute may in certain circumstances limit the
scope of the warrant sufficiently to satisfy the particularity requirement, it will not
do so where, as here, the warrant authorizes seizure of all records and where, as here,
the reference is to a broad federal statute, such as the federal wire fraud statute."
*United States v. Maxwell*, 920 F.2d 1028, 1033 (D.C. Cir. 1990) (internal citation
omitted). "References to broad statutes realistically constitute no limitation at all on
the scope of an otherwise overbroad warrant and therefore cannot save it." *Id.*;
*United States v. Roche*, 614 F.2d 6, 8 (1st Cir. 1980) ("[T]he government contends

— 19 —

that the language of the warrant limited the search to evidence of violations of 18 U.S.C. § 1341 and that this was sufficient particularity. However, section 1341 makes illegal all frauds that utilize the mails; limitation by so broad a statute is no limitation at all."); *see also United States v. Wey*, 256 F.Supp.3d 355, 386 (S.D.N.Y 2017) (rejecting the government's argument that a warrant authorizing seizure of evidence related to financial crimes satisfied the Fourth Amendment's particularity requirement).

Second, the warrant contains no time limitation. CW's allegations contain no timeframe of the alleged illegal conduct by Sollars and Awad. Attachment B to the warrant provides no time restriction on the scope of the warrant. "Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad." *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999) (citing *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir.1982)). For example, in *United States v. Abboud*, the Sixth Circuit found that a warrant was overbroad where it allowed officers to seize six years of records. *See United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006). The warrant application in that case had only described misconduct covering a single three-month period. *See id*. Thus, allowing officers "to search for evidence irrelevant to that time frame" was improper, because it allowed the government to go "rummaging" for other incriminating documents. *Id*. Likewise, the iCloud Warrant allows the FBI to

rummage through the data on three separate iCloud accounts without limitation as to time or crime.

With no meaningful limitations as to the scope of the search, the iCloud Warrant is a type of general warrant prohibited by the Constitution. *See United States v. Stabile*, 633 F.3d 219, 237 (3d Cir. 2011) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)) ("[G]ranting the Government a *carte blanche* to search every file on the hard drive impermissibly transforms a 'limited search into a general one.'"). A general warrant "vests executing officers with unbridled discretion to conduct an exploratory rummaging through [a defendant's] papers in search of criminal evidence." *United States v. $92,422.57*, 307 F.3d 137, 149 (3d Cir. 2002). The effect of such warrants is to allow "police control [to take] the place of judicial control" and place "the liberty of every man in the hands of every petty officer," by failing describe particularly what, where, and how officers are to search. *United States v. Christine*, 687 F.2d 747, 755–56 (3d Cir. 1982). If it was meant to do anything, the Fourth Amendment was meant to outlaw such boundless searches. And while typically an "infirmity due to overbreadth does not doom the entire warrant," *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018) (quotations omitted), "[i]t is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed." *Christine*, 687 F.2d at 758. Simply put, there is no saving the iCloud Warrant.

### D.   Good Faith Cannot Save the iCloud Warrant

The government will no doubt argue that the good-faith exception to the exclusionary rule should preclude suppression of the iCloud evidence. Under this exception, evidence derived from an unlawful search is not suppressed when law enforcement relies in good faith on the warrant. *See Leon*, 468 U.S. at 897. But courts have declined to apply the good-faith exception where "'the warrant was so lacking in indicia of probable cause' as to render official belief in its existence unreasonable." *Hudson*, 543 F.3d at 292 (quoting *Leon*, 468 U.S. at 923). Affidavits based on "suspicions, beliefs, or conclusions" amount to bare-bones affidavits not deserving of the good-faith protection. *White*, 874 F.3d at 496.

The iCloud Affidavit is the definition of bare bones. The allegations of CW were vague—alleging simply "criminal activity"—and devoid of a timeframe or meaningful details about how the alleged criminal activity occurred. (Ex. A: iCloud Affidavit, ¶ 14). The only attempts to buttress CW's sweeping allegations came in the form of the Las Vegas trips and the use of WhatsApp. Neither could be reasonably read as corroborating the statements of CW. As for the trips to Las Vegas, there were no ties made between the trips and the alleged bribery. Only one of the three trips even included Awad, the person with whom CW claimed Sollars had the pay-to-play relationship. And equating the use of WhatsApp with crime came entirely from the imagination of the rookie FBI Agent. Put another way, it was "only

the affiant's belief that probable cause existed" that supported the issuance of the iCloud Warrant. *White*, 874 F.3d at 496. Bare bones affidavits cannot support a finding of probable cause, nor do they amount to good-faith reliance by the FBI.

Any reasonably trained FBI agent would know that vague descriptions of criminal activity by an informant (with whom there is no prior relationship) cannot be the foundation for probable cause. *See Carpenter*, 360 F.3d at 596 ("A single piece of evidence which the law of the station house shop would recognize as clearly insufficient" is so vague as to be conclusory or meaningless.). Moreover, no reasonably trained FBI agent would fail to corroborate these unsubstantiated allegations before submitting them to the magistrate. And, finally, no reasonably trained FBI agent would submit a warrant with the complete lack of nexus between the crimes alleged (vague as they were) and the iCloud accounts targeted here. The good-faith exception to the exclusionary rule cannot save the iCloud Affidavit.

## IV.   THE RESIDENTIAL WARRANT LACKS PROBABLE CAUSE

Courts are required to suppress evidence that is directly or indirectly "the tainted 'fruit' of unlawful governmental conduct." *Nix v. Williams*, 467 U.S. 431, 441 (1984) (recounting the history of the fruit-of-the-poisonous-tree doctrine). The fruit-of-the-poisonous-tree doctrine calls for the exclusion of evidence "derived from information or items obtained in an illegal search." *United States v. Leake*, 95 F.3d 409, 411 (6th Cir. 1996). The fruit-of-the-poisonous-tree analysis asks whether the evidence "has been come at by exploitation of [the underlying] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

Here, the facts set forth in the Residential Affidavit derive almost exclusively from evidence obtained from the iCloud Warrant. For example, the Residential Affidavit contends that Awad purchased a humidor for Sollars's City Hall office. (Ex. B: Residential Warrant, ¶¶ 46-51). The entirety of that allegation stems from data obtained by the iCloud Warrant. The same is true for the information about work done at Sollars's homes (*id.* at ¶¶ 52-59), Dickerson's arrangements to have Awad's traffic tickets dismissed (*id.* at ¶¶ 71-73), and contributions made to the committee to Elect Rick Sollars (*id.* at ¶¶ 74-84). When illegally obtained information is included in a subsequent search warrant affidavit, the court must remove the tainted facts from the affidavit and evaluate probable cause without that

information. *See United States v. Bah*, 794 F.3d 617, 634 (6th Cir. 2015) ("[I]n determining whether to apply the exclusionary rule, courts remove the illegally obtained fact from the affidavit and consider whether there is still sufficient information to establish probable cause for the search."); *United States v. Wright*, 131 F. App'x. 471, 477 (6th Cir. 2005) ("[W]here a warrant affidavit contains both tainted and untainted information, a court must consider 'the sufficiency of the untainted affidavit to see if probable cause exists without the tainted information.'") (quoting *Jenkins*, 396 F.3d at 760).

What remains of the Residential Warrant—after removal of information obtained from the iCloud Warrant—are the Las Vegas trips, the use of WhatsApp, and a few paragraphs alleging local businessman Philip Sakalian bribed Sollars.

*The Las Vegas Trips.* For the same reasons that the inclusion of the Las Vegas trips did nothing to support probable cause in the iCloud Affidavit (*i.e.*, no tie between the trips and the alleged bribery), their inclusion in the Residential Affidavit likewise does not help the government in the subsequent warrant. In fact, it hurts the credibility of the affiant. The Las Vegas trips section includes a text message exchange between Awad and Sollars where Sollars asked to "borrow" money from Awad during the trip. Specifically, Sollars said, "Can I borrow 2 until next week[?]" (Ex. B: Residential Warrant, ¶ 33). Despite using the word borrow and providing a

timeline within which to repay the proposed loan (next week), the FBI agent concluded that this was evidence of a bribe. The affiant wrote:

> Your affiant *believes* these WhatsApp messages indicate that Sollars solicited Awad for a bribe of $2,000. Your affiant *believes* Awad's payment was not intended to be a loan because, based on Affiant's knowledge of their relationship, Sollars never intended to repay the amount. Your affiant *believes* that Awad was willing to make this payment because of Sollars' ability to ensure Realty Transition maintained a lucrative contract with Taylor to acquire and rehabilitate tax-foreclosed properties. (*emphasis added*).

(Ex. B: Residential Warrant, ¶ 34). The Affiant's circular argument—that the $2,000 loan was a bribe because Sollars never intended to pay it back—was supported by no facts, examples of other bribes, or anything beyond the rookie FBI Agent's "beliefs." Such baseless conclusions do not support probable cause. *See White*, 874 F.3d at 496 (identifying a bare-bones affidavit as "a conclusory affidavit, one that asserts only the affiant's belief that probable cause existed").

*WhatsApp*. The WhatsApp section of the Residential Affidavit contains nearly identical, but somehow less exacting, information than the iCloud Affidavit. It also includes a gross misstatement by the agent. Both affidavits identically set forth the pen register obtained on the various WhatsApp accounts. (*Compare* Ex. A: iCloud Warrant, ¶ 30 *with* Ex. B: Residential Warrant, ¶ 38). The copy and paste continues as the remaining paragraphs provide virtually word-for-word copies about the need and significance of WhatsApp data. (*Compare* Ex. A: iCloud Warrant, ¶¶ 31-37 *with* Ex. B: Residential Warrant, ¶¶ 39-43). The only substantive difference is that the

iCloud Affidavit contained details about the number of communications between Sollars and Awad, while the Residential Affidavit does not contain any such details. (*Compare* Ex. A: iCloud Warrant, ¶ 32 *with* Ex. B: Residential Warrant, ¶ 39). And, of course, the affiants both reached identical conclusions that the use of WhatsApp is indicative of "an attempt to conceal the nature of [the] communications from scrutiny by law enforcement and the public." (*Compare* Ex. A: iCloud Warrant, ¶ 33 *with* Ex. B: Residential Warrant, ¶ 40). Just like his fellow rookie FBI Agent who authored the iCloud Affidavit, the affiant of the Residential Affidavit provided no insight into how his scant experience and training justified such a sweeping statement about Sollars's use of WhatsApp. For the same reasons that the use of WhatsApp did not support probable cause in the iCloud Affidavit (*i.e.*, its popularity and the lack of any indication that WhatsApp was used as part of the bribery scheme alleged), this Court should give no weight to the WhatsApp section of the Residential Affidavit.

The Residential Affidavit has another WhatsApp problem. It contains a paragraph about the need for the search warrant for cellular phones that is simply false. After repeating the information about WhatsApp noted above, the affiant wrote, "Because WhatsApp and other end-to-end encrypted messaging services do not retain the content of communications on their servers, seizing the SUBJECT TELEPHONES is likely the only way to discover if evidence of the TARGET

OFFENSES exists in the content of the messages." (Ex. B: Residential Warrant, ¶ 44). But the execution of the iCloud Warrant led to the discovery of WhatsApp messages already, exposing the falsehood of this statement. The reader need only skim a few pages ahead to see references to recovered WhatsApp messages from the iCloud Warrant. (*Id.* at ¶ 55 ("Awad and Sollars exchanged the following messages on WhatsApp…"); ¶ 57 ("… the day after Awad sent the WhatsApp message . . . Sollars and Awad exchanged the following series of WhatsApp messages…"); ¶ 58 ("In two WhatsApp messages sent on November 21, 2017…")). Thus, the FBI's statement that it needed search warrants for Sollars's (and others') cellular phones to recover WhatsApp messages was simply untrue.

*The Sakalian Allegations*. The Residential Affidavit sets forth text exchanges between Sollars and Philip Sakalian, a local businessman who once work with convicted fraudster Gasper Fiore. (Ex. B: Residential Warrant, ¶¶ 60-70). Those derived from the iCloud Affidavit and must therefore be ignored. *See Bah*, 794 F.3d at 634. Additional paragraphs contained within this section of the Residential Affidavit do not get it any closer to probable cause. First, the affiant claims another anonymous informant gave Sollars and Dickerson $5,000 at the MGM Casino in Detroit. (Ex. B: Residential Warrant, ¶ 64). The time frame provided—2013 or 2014—preceded the scheme alleged in the affidavit. Moreover, the affidavit does not even attempt to corroborate this information or claim that this source is credible

or reliable. *See Frazier*, 423 F.3d at 532 ("In the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration."). Second, the Residential Affidavit recounts how Fiore disavowed any bribery relationship with Sollars, saying "he had never given Sollars anything that he would describe as 'this for that,' and that he had no business partnership with Sollars." (Ex. B: Residential Warrant, ¶ 68). But again, the affiant chose to believe the opposite of the facts.

Therefore, nothing about the Sakalian section of the Residential Affidavit provides probable cause to search Sollars's phone, residence, and lake house.

*Good-faith exception*. After extracting the unlawfully seized information obtained from the iCloud accounts, there is insufficient probable cause to justify the 14 search warrants supported by the Residential Affidavit. And the good-faith exception cannot save these warrants. Where "'the warrant was so lacking in indicia of probable cause' as to render official belief in its existence unreasonable," *Hudson*, 543 F.3d at 292 (quoting *Leon*, 468 U.S. at 923), the good-faith exception does not apply. Here, the Residential Affidavit contains virtually the same meager facts (once the electronic messages are removed) as those found in the iCloud Warrant.

Moreover, the Residential Affidavit includes two misleading or untrue statements by the affiant: (1) the claim that "borrow until next week" meant a bribe, and (2) a search warrant for the cellular phones was "likely the only way" to obtain

WhatsApp messages when the FBI already had these messages from the iCloud Warrant. (Ex. B: Residential Warrant, ¶¶ 33-34, 44). Among the reasons that the Supreme Court identified as not supporting the application of the *Leon* good-faith exception is "when the affidavit supporting the search warrant contains information that the affiant knows (or is reckless in not knowing) contains false information." *United States v. Sanders*, 59 F.4th 232, 243 (6th Cir. 2023) (quoting and citing *Laughton*, 409 F.3d at 748, and *Leon*, 468 U.S. at 914-23). The inclusion of these two false statements in the Residential Affidavit further cut against the government's reliance on the good-faith exception.

## V.      CONCLUSION

For the reasons set forth above, all evidence derived from the iCloud Warrant and the Residential Warrant must be suppressed.

Dated: May 3, 2023                    Respectfully submitted,

                                      */s/ Kevin M. Mulcahy*
                                      Kevin M. Mulcahy (MI: P86618)
                                      Flannery | Georgalis, LLC
                                      719 Griswold, Suite 280
                                      Detroit, MI 48226
                                      313-488-0147
                                      KMulcahy@flannerygeorgalis.com

                                      */s/ Todd F. Flood*
                                      Todd F. Flood (MI: P58555)
                                      155 W. Congress, Suite 603
                                      Detroit, MI 48226
                                      (248) 547-1032
                                      tflood@floodlaw.com

— 30 —

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2023, a copy of this motion was filed electronically. Notice will be sent to all the parties to this action through the Court's CM/ECF system.

*/s/ Kevin M. Mulcahy*
Kevin M. Mulcahy
