UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                              Case No. 19-cr-20836

v.                                           HON. MARK A. GOLDSMITH

RICHARD SOLLARS,

        Defendant.

_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS (Dkt. 97)**

Before the Court is Defendant Richard Sollars's motion to suppress evidence gathered from warrants authorizing the search of Sollars's iCloud account and Sollars's home (Dkt. 97). For the reasons set forth below, the Court denies the motion.[1]

**I. BACKGROUND**

A federal grand jury returned an indictment charging (i) the Mayor of the City of Taylor, Michigan, Richard Sollars; (ii) businessman and owner of Realty Transition, LLC, Shady Awad; and (iii) City employee Jeffrey Baum with crimes that include bribery concerning federal funds under 18 U.S.C § 666(a), wire fraud under 18 U.S.C § 1343, and conspiracy under 18 U.S.C § 371. Indictment (Dkt. 1). The indictment alleges that Awad and Sollars engaged in a pay-to-play scheme in which Awad provided Sollars with free home renovations, gifts, cash, transportation,

---

[1] In addition to the motion, the briefing includes the Government's response (Dkt. 103) and Sollars's reply (Dkt. 108). The Court held a hearing on the motion on July 6, 2023.

1

and other things of value in exchange for Sollars's assistance with Realty Transition's efforts to purchase and redevelop tax-foreclosed properties obtained by the City. Id. ¶¶ 1–10.

In the course of its investigation, the Government obtained two search warrants, both of which are at issue here.

### A. The Apple/iCloud Warrant

The first warrant authorized the search of Sollars's iCloud account. See Apple/iCloud Warrant (Dkt. 104-1). The affidavit in support of the warrant includes allegations from confidential sources suggesting Sollars engaged in corrupt dealings with Awad and other City contractors. According to the affidavit, a former employee of Realty Transition, identified as a cooperating witness (CW), told the FBI that Awad paid for, at least in part, Sollars's vacation home and renovations to Sollars's residential home in exchange for contracts for tax-foreclosed homes as part of a "pay-to-play, quid pro quo scheme." Apple/iCloud Aff. ¶ 14.[2] The CW further stated that Sollars and Awad traveled to Las Vegas together on multiple occasions, one of which included a trip to gamble during the 2018 Super Bowl. Id. ¶ 15. The affidavit relays that a confidential source (CHS-1) also reported that Sollars and Awad, along with others, traveled to Las Vegas to gamble. The affidavit further describes a second confidential source (CHS-2) who stated that he gave Sollars $5,000 in 2013 or 2014. Id. ¶ 21.

In addition to information received from confidential sources, the Apple/iCloud Affidavit states that the FBI received "pen register" data for Sollars's WhatsApp accounts. Id. ¶¶ 30–31. According to the affidavit, the pen register data recorded that Awad and Sollars had exchanged 665 WhatsApp messages. Id. ¶ 32. The same pen register data showed around nine WhatsApp

---

[2] The affidavit in support of the Apple/iCloud Warrant is appended to the warrant.

messages exchanged between Sollars and his chief of staff, Robert Dickerson. Id. ¶ 32. However, the pen register data did not contain the content of these messages. Id. ¶¶ 32–34.

### B. The Residential Warrant

After the Government searched Sollars's iCloud account pursuant to the Apple/iCloud Warrant, it obtained a second search warrant authorizing the search of Sollars's home in Taylor, Michigan. See Residential Warrant (Dkt. 104-2).[3] The affidavit in support of the Residential Warrant largely incorporated the same information as the Apple/iCloud Warrant. Id. Importantly, however, the affidavit also contained WhatsApp communications stored on Sollars's iCloud account, which were obtained through the Apple/iCloud Warrant. According to the affidavit, these communications document Sollars's acceptance of things of value from Awad and others looking to contract with the City. Such communications include conversations in which Sollars requested from Awad a sum of $2,000, a humidor, and home improvement services for his residential and vacation homes. Id. ¶¶ 33–34, 46–51, 52–59. The affidavit also quotes text messages between Sollars and a principal of a City contractor in which that individual discusses providing Sollars with concert tickets and flights to Las Vegas. Id. ¶¶ 60–62. According to the Government, these messages, coupled with other evidence included in the affidavit, indicate that Sollars and Awad engaged in the alleged pay-to-play scheme. Resp. at 9.

## II. ANALYSIS

Sollars moves to suppress the evidence seized during the execution of the Apple/iCloud and Residential Warrants. See Mot. He contends that Apple/iCloud Warrant was not supported by probable cause, lacks sufficient nexus, and is overbroad. Id. at 10–21. Sollars also argues that

---

[3] The affidavit in support of the Residential Warrant is appended to the warrant.

the Residential Warrant lacks probable cause. Id. at 21. He further submits that neither warrant is subject to the good-faith exception to the exclusionary rule. Id. at 11.

### A. Warrants and Probable Cause under the Fourth Amendment

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched . . . ." U.S. Const. amend. IV. Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." United States v. Christian, 925 F.3d 305, 311 (6th Cir. 2019) (en banc). A warrant is supported by probable cause when, "given all the circumstances set forth in [an] affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). A court's review of the sufficiency of an affidavit "is limited to the information presented in the four corners of the affidavit." United States v. Brown, 828 F.3d 375, 381 (6th Cir. 2016).

### B. The Apple/iCloud Warrant

Sollars challenges the validity of the Apple/iCloud Warrant on multiple grounds. He argues that the warrant (i) is without probable cause because it is based on information from a confidential informant whose statements are uncorroborated and lacking in reliability, (ii) lacks a nexus between the Apple/iCloud account and the evidence sought, and (iii) is overbroad in its scope. Mot. at 10–21. Sollars further argues that the warrant is not subject to the good-faith exception to the exclusionary rule because the Government did not act with good faith in relying on the warrant to conduct the search. Id. at 22.

1. **Reliability of the Confidential Source**

Sollars submits that the affidavit fails to establish probable cause because it relies on the statements of a confidential source, CW, without supplying the requisite indicia of reliability or corroboration of law enforcement. Id. at 11–13.

When an affidavit is based on information from a confidential source, a court must "consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of circumstances evaluating the impact of that information." United States v. Crumpton, 824 F.3d 593, 615–616 (6th Cir. 2016). "While independent corroboration of a confidential informant's story is not a sine qua non to a finding of probable cause, . . . , in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." United States v. Frazier, 423 F.3d 526, 532 (6th Cir. 2005) (punctuation modified).

The affidavit avers few facts to demonstrate CW's reliability. See Apple/iCloud Aff. The affidavit does not assert that the CW previously provided credible information to law enforcement, nor does it provide any information regarding the length or nature of the relationship between the CW and the affiant. See Frazier, 423 F.3d at 532 (concluding that an affidavit that supplied "no averments about the reliability of the information provided by the anonymous informants in the past" or "length of the relationship" between the affiant and informant failed demonstrate informant's reliability).

The Government argues that the CW is reliable in part because he or she was an employee of Reality Transition and "had a basis of knowledge for the information he or she provided." Resp. at 14. This vague assertion does little to demonstrate CW's reliability. The affidavit does not

5

provide any further background regarding CW's basis for knowledge, such as the dates of the CW's employment or his or her role at the company. See id.

The Government also argues that the CW is "inherently reliable" because he or she would be subject to prosecution if he or she made a false statement to the FBI. Resp. at 14. In support of this argument, the Government submits that an "informant that is known to police is 'generally sufficient to establish probable cause without further corroboration because the legal consequences of lying to law enforcement officials tend to ensure reliability.'" Resp. at 13 (quoting United States v. Hodge, 714 F.3d 380, 385 (6th Cir. 2013)).

As Sollars points out, however, each of the cases cited by the Government in support of this position involved informants who were identified in the affidavit or known to the affiant or law enforcement.[4] Reply at 2–3. That is not the case here. The Government vaguely asserts in its response that the CW is "someone known to the FBI." Resp. at 14. But a review of the Apple/iCloud affidavit reveals no assertions that the CW was known to the affiant or others in the FBI. See Apple/iCloud Aff. Because the CW is neither known to the affiant nor named in the affidavit, independent corroboration by law enforcement was required to demonstrate the CW's reliability. See Frazier, 423 F.3d at 532.

---

[4] See United States v. Kinison, 710 F.3d 678, 683 (6th Cir. 2013) (holding that an informant who was known to law enforcement, personally observed criminal activity, and had met with agents three different times was sufficiently reliable); United States v. Couch, 367 F.3d 557 (6th Cir. 2004) (concluding that an informant who was named in the affidavit, who was known to the officers, and who personally observed criminal activity was sufficiently reliable); United States v. Woosley, 361 F.3d 924, 925 (6th Cir. 2004) (finding as sufficiently credible an informant known to law enforcement from the provision of accurate information in the past); United States v. Allen, 211 F.3d 970, 975–976 (6th Cir. 2000) (en banc) (holding that an informant known to agents for five years, and whose name was provided to the magistrate, was sufficiently reliable); Hodge, 714 F.3d at 382 (finding as sufficiently reliable an informant named in the affidavit and who personally observed criminal activity at location to be searched).

The Government argues that the FBI corroborated "significant parts of CW's story" because the CW accurately reported (i) that Awad owned Realty Transition at the time that Sollars was Mayor of the City, (ii) that the City awarded Realty Transition contracts for tax-foreclosed homes since at least 2015, and (iii) that Sollars and Awad traveled to Las Vegas together to gamble. Resp. at 14–15.

The Government's arguments are unavailing. The Government's asserted corroboration consists largely of publicly available information, such as Awad's ownership of Realty Transition, Sollars's role as mayor, and Realty Transition's role as a city contractor. Resp. at 14. None of this information bolsters CW's reliability by indicating that the CW maintained insider or special knowledge of Awad's or Sollars's affairs. See United States v. Wright, No. 4:06-cr-0490, 2007 WL 2607669, at *5 (N.D. Ohio Sept. 5, 2007) (explaining that the value of corroboration stems from "demonstrat[ing] inside information[,] a special familiarity with [the defendant's] affairs"). And while the Government further points to corroboration of the CW allegation that Sollars and Awad frequently traveled to Las Vegas to gamble with Sollars, Resp. at 15, corroboration of such "innocent details" alone is insufficient to establish probable cause. Allen, 211 F.3d at 976 (citing United States v. Gibson, 928 F.2d 250, 253 (8th Cir.1991)).

Because the affidavit failed to demonstrate CW's reliability as an informant or sufficiently detail independent corroboration of CW's allegations, the Court concludes that the affidavit lacked probable cause to support the validity of the Apple/iCloud warrant. Although the Government's failure to establish CW's reliability as an informant is sufficient to conclude that the warrant lacks probable cause, the Court nonetheless proceeds to address the parties' arguments regarding the nexus requirement and scope of the warrant.

### 2. Nexus

To support a search, the affidavit must demonstrate "a nexus between the place to be searched and the evidence sought." United States v. Laughton, 409 F.3d 744, 747–748 (6th Cir. 2005).

Sollars submits that the Apple/iCloud Affidavit lacks a sufficient nexus between the "alleged bribery scheme" and the searched Apple/iCloud accounts. Mot. at 16. Specifically, Sollars argues that the "affidavit does not claim that Sollars and Awad conducted [the] alleged bribery scheme using electronic means . . . [and] CW provided no details regarding methods of communication." Id.

The Government counters that the affidavit "established that Sollars used his Apple iPhone in furtherance of the bribery scheme and that evidence would be found in the data stored within his related Apple iCloud account." Resp. at 18. The Government argues that the affidavit established that "pen register data from WhatsApp showed that Sollars was using an iPhone to send and receive messages" and that iCloud data regarding Sollars's use of WhatsApp "could provide valuable clues as to the 'who, what, why, when, where, and how of crimes such as bribery and money laundering.'" Id. (quoting Apple/iCloud Aff. ¶ 45). Moreover, the affiant asserts that the pen register revealed that Sollars and Awad exchanged around 665 WhatsApp messages. Apple/iCloud Aff. ¶ 32. These allegations are sufficient to establish a nexus between the Apple/iCloud account and the alleged bribery and money laundering. See United States v. Bass, 785 F.3d 1043, 1049 (6th Cir. 2015) (holding that affidavit stating that defendant "frequently used cell phones to communicate" contained sufficient detail to tie defendant's cell phone to alleged criminal activity).

8

Sollars resists this conclusion by arguing that the affidavit makes "no connection between vague assertions by CW and the use of electronic communications" and cites case law in which courts have rejected affidavits based solely on law enforcement's "suspicions, beliefs, or conclusions." Mot. at 17 (citing Laughton, 409 F.3d at 748). But the affidavit goes well beyond mere "suspicions," in that it sets forth evidence gathered from the pen register showing that Sollars and Awad frequently communicated via WhatsApp. "[I]t does not require speculation to infer" that evidence of the alleged crimes would be located in the iCloud account where such communications are stored. United States v. Morales, No. 21-cr-00022, 2023 WL 2818730, at *17 (M.D. Tenn. Apr. 6, 2023) (finding sufficient nexus between an alleged drug dealer's operations and his home containing his records and phone).

The Apple/iCloud Affidavit establishes a sufficient nexus between the alleged pay-to-play scheme and Sollars's iCloud account.

### 3. Scope of the Warrant

"It is well-settled that items to be seized pursuant to a search warrant must be described with particularity to prevent the seizure of one thing under a warrant describing another in violation of the Fourth Amendment. The chief purpose of the particularity requirement is to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." United States v. Richards, 659 F.3d 527, 536–537 (6th Cir. 2011) (punctuation modified). Where the underlying search involves electronic data, courts in the Sixth Circuit are guided by the "Fourth Amendment's bedrock principle of reasonableness on a case-by-case basis." Id. at 538.

9

Sollars argues that the Apple/iCloud warrant is overbroad because it (i) provides "no meaningful limitation to the scope of the search," and (ii) contains no time limitation. Mot. 19–20. Neither of these arguments is a basis for invalidating the Apple/iCloud Warrant.

As to the first argument, Sollars asserts that the warrant's authorization of searching Sollars's entire iCloud account renders it overbroad. Id. at 19. But as the Government points out, Resp. at 20–21, the United States Court of Appeals for the Sixth Circuit has repeatedly stated that a warrant satisfies the particularity requirement "if its text constrains the search to evidence of a specific crime." United States v. Castro, 881 F.3d 961, 965 (6th Cir. 2018) (upholding validity of warrant limiting search to evidence of aggravated burglary); United States v. Willoughby, 742 F.3d 229, 233 (6th Cir. 2014) (upholding validity of search warrant containing a "global modifier" that limited search to a search of evidence "related to a list of offenses"); see also United States v. Stetkiw, No. 18-20579, 2019 WL 2866516, at *2 (E.D. Mich. July 3, 2019) ("A search warrant for computers satisfies the Fourth Amendment particularity requirement if it is limited to a specific federal crime or specific material.").

Sollars counters that the warrant's attempt to limit the scope of the search to offenses like money laundering and bribery realistically constitutes no limitation at all. Mot. at 19. This argument is not entirely devoid of merit. As Sollars points out, several courts have invalidated search warrants authorizing searches limited only by references to broadly applicable federal statutes. Id. at 19–20 (citing United States v. Maxwell, 920 F.2d 1028, 1033 (D.C. Cir. 1990); United States v. Roche, 614 F.2d 6, 8 (1st Cir. 1980); United States v. Wey, 256 F.Supp.3d 355, 386 (S.D.N.Y 2017)).

However, as an initial matter, the Court is not bound by the out-of-circuit cases upon which Sollars relies. Moreover, these cases are distinguishable because they involved warrants that

10

authorized searches without the benefit of an incorporated affidavit to limit the scope of the search or searches not limited to a particular crime. See Maxwell, 920 F.2d at 1033 (concluding that warrant limiting search only by reference to U.S.C. § 1341 and "without benefit of the limiting affidavit" was "fatally overbroad"); Roche, 614 F.2d at 8 (characterizing as too generic a warrant that failed to incorporate a supporting affidavit); see also Wey, 256 F.Supp.3d at 386 (finding as invalid warrant that authorized search of all documents related to a defendant and his consulting company and "unlimited by relevance to criminal conduct or by timeframe").

By contrast, the Apple/iCloud Affidavit, which the Apple/iCloud Warrant incorporates, limited the search of Sollars's iCloud account to evidence of theft or bribery concerning programs receiving federal funds under 18 U.S.C § 666 or money laundering under 18 U.S.C § 1956. See Apple/iCloud Warrant at PageID.729, 756; Apple/iCloud Aff. ¶ 4. In limiting the scope of the search to these specified crimes, the warrant provided law enforcement with "enough to guide and control their judgment in selecting what to take" from the iCloud account. United States v. Carter, 792 F. App'x 366, 369 (6th Cir. 2019) (punctuation modified) (finding as valid search warrant that "constrain[ed] evidence to search of a specific crime").[5]

Sollars next asserts that the warrant is overbroad because it fails to provide a temporal restriction. Mot. at 20; Reply at 7. Sollars's argument is unavailing for two reasons.

First, as noted by the Government, Resp. at 22, the Sixth Circuit has repeatedly upheld the validity of warrants that fail to provide a time limit where the crimes described in the affidavits

---

[5] The Government further argues that the "search of a cloud-based storage account is, in practice, no different than the search of a computer hard drive or phone." Resp. at 22. Sollars does not appear to dispute this contention or make any argument that the Court should analyze the search of a cloud storage platform differently than that of a computer or cell phone. See Mot. at 18–19 (acknowledging that "searches for electronic data is challenging," but that courts employ the Fourth Amendment's reasonableness analysis); Reply.

fulfill that same limiting function. See United States v. Ford, 184 F.3d 566, 578 (6th Cir. 1999) (upholding validity of portions of a warrant limited to "fruits and evidence of gambling . . . even though those portions [of the warrant] do not contain a time limitation" because "their subject-matter limitation . . . fulfills the same function as a time limitation would have done"); United States v. Sullivan, 751 F. App'x 799, 804 (6th Cir. 2018) (upholding validity of warrant to search defendant's laptop without time limitation due to specified subject-matter limitation).

Although the Apple/iCloud Warrant does not expressly contain a time limit, the affidavit upon which it relies makes clear that the investigation sought evidence for alleged criminal conduct that started in 2015—when Realty Transition began receiving City contracts—and continued through Sollars's second mayoral term. See Apple/iCloud Aff. ¶¶ 8–14, 32 (averring that Realty Transition began obtaining City contracts in 2015 and that Awad provided benefits to Sollars as part of a pay-to-play scheme in return for the contracts). These allegations are sufficient to define relevant time period during which the warrant authorized the Government to search.

Sollars attempts to rely on Ford for the proposition that a "general [time] description may suffice when the police could supply no better information, but fail when a narrow description was available." Reply at 8 (citing Ford, 184 F.3d at 575). But as discussed above, the Ford court ultimately held that portions of a warrant that lacked an express time period were nonetheless valid because the scope of the warrant was limited by the "evidence of the crimes described in the affidavit." 184 F.3d at 578.

Second, even if the Apple/iCloud warrant was overbroad with respect to time, this defect does not invalidate the entire warrant. As the Government points out, "infirmity due to overbreadth does not doom the entire warrant." Castro, 881 F.3d at 965 (punctuation modified). Rather, the "remedy is to sever the offending phrase from the warrant, suppress any evidence collected under

12

it, and admit the evidence collected under the valid portions that remain." Id. Sollars makes no argument identifying any particular evidence should be excluded because it was collected under an overbroad timeframe. See Mot.; Reply. Indeed, Sollars appears to agree with the Government that the relevant time period began in 2015 when Awad made a proposal to City counsel regarding rehabilitated housing. Reply at 8.

Because the Apple/iCloud Affidavit limits the scope of the warrant to particular crimes and provides allegations limiting the subject-matter of the Government's investigation to a time-period during which the alleged crimes occurred, the Court finds that the warrant is not overbroad.[6]

**4. Good Faith**

Although the Court concludes that the Apple/iCloud warrant was not supported by probable cause, the good-faith exception to the exclusionary rule applies.

The "good-faith exception applies when a warrant issued by a neutral and detached magistrate is discovered, after the search, to have been nonetheless invalid—and, hence, the search unlawful—yet the officer conducting the search acted in objectively reasonable reliance on that warrant." United States v. Hodson, 543 F.3d 286, 292 (6th Cir. 2008) (punctuation modified). In this case, the court must analyze "whether the warrant was so lacking indicia of probable cause as to render official belief in its existence entirely unreasonable." Kinison, 710 F.3d at 685 (punctuation modified).

"An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a 'bare bones' affidavit." United States v. White,

---

[6] Sollars also argues that the Apple/iCloud Warrant is an unconstitutional general warrant because it is overbroad. Mot. at 21. This characterization does not add to the substance of Sollars's overbreadth argument or change the Court's analysis in rejecting that argument. In other words, because the Court finds that the warrant is not overbroad, the Court concludes that the Apple/iCloud Warrant is not an impermissible general warrant.

874 F.3d 490, 496 (6th Cir. 2017) (punctuation modified). A "bare bones" affidavit provides "nothing more than a mere guess that . . . evidence of a crime would be found" and is "either completely devoid of facts to support the affiant's judgment that probable cause exists, or so vague as to be conclusory or meaningless." Id. (punctuation modified). Indeed, the "bare bones" label is "reserve[d] for an affidavit that merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." United States v. Gilbert, 952 F.3d 759, 763 (6th Cir. 2020) (punctuation modified).

Sollars argues that evidence gathered from the Apple/iCloud Warrant cannot avoid application of the exclusionary rule because the warrant relies on an affidavit that "is the definition of bare bones." Mot. at 22. But contrary to this assertion, the affidavit does not merely contain the affiant's suspicions. Rather, the affiant relied upon a statement from CW, who alleged that Sollars and Awad engaged in a "pay to play, quid pro quo scheme," whereby Awad paid, at least in part, for new flooring in Sollars's residential home and vacation home. Apple/iCloud Aff. ¶ 14. In addition, the affidavit details how Sollars, Awad, and Paul Phillips (the owner of a local hardwood flooring company) traveled together to Las Vegas during a trip in which Sollars gambled large sums of money.[7] Id. ¶ 17. The affidavit further details how each of Sollars, Awad, and Dickerson frequently used WhatsApp to communicate with one another. Id. ¶ 32. Viewing these allegations in their totality, see White, 874 F.3d at 502, the Court concludes that the Government acted reasonably in relying on the warrant, see Hodson, 543 F.3d at 292.

---

[7] Sollars argues that the Government's reliance on the Currency Transaction Reports cited in the affidavit is misleading because the reports do not show how much of Sollars's own money was gambled. Mot. at 3 n.1. The Court agrees with the Government that, regardless of whether the amounts reflect Sollars's own money, the amount of dollars played is notable for purposes of analyzing whether the affidavit is "bare bones."

Sollars resists this conclusion by arguing that, with the exception of the Sollars's trips to Las Vegas and use of WhatsApp, the Government failed to corroborate the CW's allegations of the pay-to-play scheme. Mot. at 22. While the Government failed to sufficiently corroborate the CW's allegations to support a finding of probable cause, analysis of whether the Government exercised good-faith reliance on the warrant centers on whether "executing [agents] reasonably believed that the warrant was properly issued, <u>not</u> whether probable cause existed in fact." <u>Kinison</u>, 710 F.3d at 685 (punctuation modified, emphasis in original). The Government did corroborate elements of the CW's story, such as confirming that Sollars took trips with Awad and the owner of a hardwood flooring company to gamble in Las Vegas in February of 2018. Such corroboration, while falling short of establishing probable cause, supplied the Government with sufficient reason to believe the CW's story. See <u>United States v. Novak</u>, 814 F. App'x 1009, 1013 (6th Cir. 2020) (affirming district court's denial of motion to suppress under the good-faith exception where officers had "reason to believe" that a search would reveal evidence after they "generally corroborated" elements of confidential informant's tip connecting defendant's residence with drug dealing activity).

Sollars also submits that the affiant's "equating" of Sollars's frequent use of WhatsApp with the commission of a crime amounts to nothing more than the "imagination of the rookie FBI agent." Mot. at 22–23. To be sure, the mere use of WhatsApp messaging platform alone would be insufficient to support a good faith reliance on the warrant. However, the large number of such communications between Sollars and Awad (665 messages), Sollars's chief of staff and Awad (517 messages), contrasted with the small number of messages between Sollars and his chief of staff (nine messages), viewed together with the entirety of the allegations in the affidavit, weigh in favor of finding that the affidavit has cleared the "bare bones" threshold. <u>White</u>, 874 F.3d at

15

502 (explaining that courts must review affidavits "holistically, examining the totality of the circumstances and employing a healthy dose of common sense").

Because the Apple/iCloud Affidavit was not so "bare bones" such that no reasonable officer would rely upon it, the Apple/iCloud Warrant is subject to the good-faith exception to the exclusionary rule.

### C. The Residential Warrant

Sollars also challenges the validity of the Residential Warrant authorizing the search of Sollars's home. See Mot. at 24–30. Sollars argues that the Residential Affidavit relies almost entirely on facts derived from the Apple/iCloud Warrant, which in Sollars's view, lacked probable cause and was executed without good faith. Id. The Court first analyzes whether the Residential Warrant is supported by probable cause and proceeds to address whether the warrant is subject to the good-faith exception to the exclusionary rule.

#### 1. Probable Cause

According to Sollars, because evidence from the Apple/iCloud Warrant was obtained illegally, under the fruit-of-the-poisonous-tree doctrine, such information must be excluded from the Court's probable cause analysis. Id. at 23–24.

Sollars's argument fails because, as explained above, the Court has determined that the Government's good faith reliance on the Apple/iCloud Affidavit precludes application of the exclusionary rule. The Court may properly consider facts derived from the Apple/iCloud Warrant in its analysis of the Residential Affidavit.

Regarding the sufficiency of the information contained in the Residential Affidavit, the affidavit supplies facts sufficient to support the magistrate judge's finding of probable cause. In addition to including the information contained in the Apple/iCloud Affidavit—i.e, CW's

allegation of Sollars's pay-to-play scheme, Las Vegas travel with Awad, and use of WhatsApp communications, Residential Aff. ¶¶ 27–35—the affidavit incorporates a number of WhatsApp communications suggesting that Sollars accepted services and other benefits from contractors seeking to do business with the City. These allegations include receiving from Awad: a sum of $2,000 (which may or may not be a loan), a humidor, and home improvement services for his residential and vacation homes. Id. ¶¶ 33–34, 46–51, 52–59. The affidavit also cites text messages between Sollars and a principal of a City contractor that suggest that the contractor gave Sollars free concert tickets and flights to Las Vegas. Id. ¶¶ 60–62. These allegations are sufficient to support a finding of probable cause to believe that evidence of Sollars's pay-to-play scheme would be found in his house.

### 2. The Good-Faith Exception

Because the Residential Warrant was supported by probable cause, the Court does not need to address whether the good-faith exception precludes application of the exclusionary rule. United States v. Dyer, 580 F.3d 386, 393 (6th Cir. 2009). For purposes of completeness, however, the Court nonetheless concludes that the good-faith exception would apply.

As detailed above, the Residential Affidavit contains information suggesting that Sollars leveraged City contract opportunities to receive things of value like home improvement services, loans, transportation, or entertainment. These allegations surpass the "minimally sufficient nexus between the illegal activity [the alleged pay-to-play scheme] and the place to be searched [Sollars's home]." White, 874 F.3d at 497.

The Residential Affidavit clears the good-faith hurdle, even without consideration of evidence gathered from the Apple/iCloud Warrant. As the Government points out, the Residential Affidavit sets forth information derived independent of the Apple/iCloud Warrant, including,

17

namely, (i) the CW's allegation that Sollars received home renovations in exchange for City contracts, (ii) Sollars's prior receipt of $5,000 from CHS-2 at the MGM Casino, (iii) Sollars's travels to Las Vegas with City contractors, and (iv) the suggestion from Sollars's chief of staff that CHS-2 purchase Sollars's favorite cigars after CHS-2 showed interest in obtaining a marijuana license. See Residential Aff. ¶¶ 27–32, 49, 64. Given this information, the affidavit was not so lacking in indicia of probable cause as to render the law enforcement's reliance on it unreasonable.

Aside from the sufficiency of the Residential Affidavit, Sollars also argues that reliance on the affidavit fails to meet the good-faith standard because it contains "two misleading or untrue statements by the affiant: [i] the claim that 'borrow until next week' meant a bribe, and [ii] [the claim] that a search warrant for the cellular phones was 'likely the only way' to obtain WhatsApp messages when the FBI already had these messages from the iCloud." Mot. at 36 (quoting Residential Aff. ¶¶ 33–34, 44). As Sollars points out, the good-faith exception to the exclusionary rule does not apply where "the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information." Laughton, 409 F.3d at 748.

Neither of the statements identified by Sollars precludes application of the good-faith exception. As to the first alleged misstatement, the Residential Affidavit makes clear that the affiant "believe[d]" that the $5,000 payment was a bribe "based on [the] Affiant's knowledge of" Sollars and Awads' relationship. Residential Aff. ¶¶ 33–34. Moreover, as the Government points out, whether a loan constitutes a "bribe" under § 666(a)(1)(B) is likely an issue of statutory interpretation. When viewed in light of these considerations, the affiant's representation amounts to a subjective characterization of the $2,000 payment based on his knowledge and interpretation of the law. Such a statement does not constitute an intentional or reckless falsehood. See United States v. Rodriguez-Suazo, 346 F.3d 637, 648 (6th Cir. 2003) (explaining that a defendant's mere

18

allegation that an officer misrepresented whether anyone entered a surveilled building is insufficient to conclude that the affiant recklessly falsified the affidavit).

The Court similarly rejects Sollars's argument that the affiant's misstatement that seizure of Sollars's cell phone was "likely the only way to discover" the content of Sollars's WhatsApp messages constituted an intentional or reckless falsehood. It is clear from the face of the Residential Affidavit that the Government had already obtained WhatsApp messages without the seizure of Sollars's cell phone. See Mot. 29–30. A common-sense reading of the affidavit compels the conclusion that the affiant did not intentionally or recklessly misstate how the Government may access Sollars's WhatsApp messages. See White, 874 F.3d at 502.

In short, because Sollars cannot demonstrate that the affiant intentionally or recklessly falsified the Residential Affidavit, Sollars's attempt to avoid the application of the good-faith exception to the exclusionary rule must fail.

### III. CONCLUSION

For the reasons stated above, the Court denies the motion to suppress (Dkt. 97).

SO ORDERED.

Dated: July 14, 2023                  s/Mark A. Goldsmith
  Detroit, Michigan                 MARK A. GOLDSMITH
                                       United States District Judge