UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
MICHIGAN SOUTHERN
DIVISION

United States of America,

              Plaintiff,

    v.

Richard Sollars,

              Defendant.

Case No. 19-20836

Honorable Mark A. Goldsmith

---

## MOTION TO SUPPLEMENT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

Defendant Richard Sollars, through counsel, respectfully moves this Honorable Court for leave to supplement his previously filed Proposed Findings of Fact and Conclusions of Law with the information contained in the publicly filed response brief of Judge Victoria Shackelford. Judge Shackelford's brief directly refutes the testimony of the government's key witness, Shady Awad, and establishes that Awad committed perjury during the evidentiary hearing. This perjured testimony unfairly tainted the proceedings and the Court's assessment of the evidence. Pursuant to Loc.R. 7.1(a) and this Court's standing Order, the undersigned counsel certifies that counsel personally spoke to counsel for the government, explaining the nature of the relief to be sought

by way of this motion and seeking concurrence in the relief; opposing counsel thereafter expressly denied concurrence.

For the reasons set forth in the attached brief in support of this motion, Sollars respectfully requests that this Court grant him leave to supplement his Proposed Findings of Fact and Conclusions of Law with the information set forth in the publicly filed response of Judge Victoria Shackelford to the false and defamatory testimony of government witness Shady Awad.

Dated: June 5, 2024                     Respectfully submitted,

s/ Todd F. Flood
TODD F. FLOOD (P58555)
Flood Law, PLLC
Attorneys for Defendant
155 W. Congress Street, Ste 350
Detroit, MI 48226
Phone: (248) 547-1032
Email: tflood@floodlaw.com


s/ Vincent J. Haisha
VINCENT J. HAISHA (P76506)
Flood Law, PLLC
Attorneys for Defendant
155 W. Congress Street, Ste 350
Detroit, MI 48226
Phone: (248) 547-1032
Email: vhaisha@floodlaw.com

UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
MICHIGAN SOUTHERN
DIVISION

United States of America,

               Plaintiff,

     v.

Richard Sollars,

               Defendant.

Case No. 19-20836

Honorable Mark A. Goldsmith

---

**BRIEF IN SUPPORT OF MOTION TO SUPPLEMENT PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

---

Defendant Richard Sollars, through counsel, respectfully moves this Court for leave to supplement his previously filed Proposed Findings of Fact and Conclusions of Law with information recently made public by 23rd District Court Judge Victoria Shackelford refuting the testimony of government witness Shady Awad.

The information provided in Judge Victoria Shackelford's response brief (Ex. A) is critically important to supplement Mr. Sollars' Proposed Findings of Fact and Conclusions of Law because it directly bears on the credibility and reliability of the government's key witness, Shady Awad. Ex. A at 1. Awad's testimony was central to the government's case against Mr. Sollars, as it formed the basis for the loss amount the government intends to claim at sentencing. *Id*. at 12-13.

Judge Shackelford's detailed refutation of Awad's sworn testimony about her involvement in the alleged bribery scheme demonstrates that Awad committed perjury and provided materially false information to the court. *Id*. at 1-13. Her evidence shows that Awad lied about key aspects of the alleged conspiracy, including:

1. The existence of a coordinated plan for Judge Shackelford to move to Taylor and later be appointed as a judge (*Id*. at 2-3);

2. Awad reducing the price of Judge Shackelford's home to entice her to participate in the scheme (*Id*. at 4-6);

3. Judge Shackelford requesting $15,000 in additional work on her home as part of the conspiracy (*Id*. at 6-9); and

4. Judge Shackelford colluding with Awad to purchase a side lot behind her home (*Id*. at 9-12).

The fact that Awad demonstrably lied under oath about these material issues severely undermines his credibility as a witness and calls into question the veracity of his other uncorroborated allegations against Mr. Sollars. If Awad was willing to falsely implicate a sitting judge in criminal wrongdoing, it casts serious doubt on the truthfulness of his claims about Mr. Sollars' alleged misconduct.

Moreover, the government's continued reliance on Awad's testimony after being made aware of his perjury raises grave concerns about the integrity of the

prosecution. Ex. A at 12-13. As Judge Shackelford notes, the Department of Justice confirmed she was never a target of the investigation after reviewing her evidence, yet the government has apparently taken no steps to correct the record or address Awad's false statements. *Id*. This suggests a troubling willingness by the Government to overlook or even condone perjury by its key witness.

The taint of Awad's perjured testimony extends beyond the courtroom, as it has caused severe damage to Judge Shackelford's reputation and career. *Id*. at 1-2, 12-13. The spread of false information arising from Awad's lies has unfairly prejudiced an innocent party and undermined public confidence in the judicial system. *Id*. The government's failure to take corrective action compounds this harm and raises questions about the fairness of the proceedings against Mr. Sollars.

In light of these serious concerns, it is essential that Judge Shackelford's response brief be considered as part of the factual record in Mr. Sollars' case. Her evidence directly pertains to the credibility of the government's central witness and the reliability of the allegations against Mr. Sollars. The government's apparent acquiescence to Awad's perjury and the resulting harm to an innocent third party are relevant to assessing the overall integrity of the case against Mr. Sollars. Supplementing the Proposed Findings of Fact and Conclusions of Law with Judge Shackelford's brief will ensure the Court has a complete and accurate record upon which to base its decision, and will help to mitigate the unfair prejudice caused by

Awad's false testimony.

WHEREFORE, Defendant Richard Sollars respectfully requests that this Honorable Court grant him leave to file a supplement to his Proposed Findings of Fact and Conclusions of Law.

Dated: June 5, 2024                    Respectfully submitted,

s/ Todd F. Flood
TODD F. FLOOD (P58555)
Flood Law, PLLC
Attorneys for Defendant
155 W. Congress Street, Ste 350
Detroit, MI 48226
Phone: (248) 547-1032
Email: tflood@floodlaw.com


s/ Vincent J. Haisha
VINCENT J. HAISHA (P76506)
Flood Law, PLLC
Attorneys for Defendant
155 W. Congress Street, Ste 350
Detroit, MI 48226
Phone: (248) 547-1032
Email: vhaisha@floodlaw.com

# EXHIBIT
# A

# Judge Victoria Shackelford's Response to Shady Awad's False and Defamatory Testimony

### 1. Introduction

On March 5, 2024, Shady Awad testified in an evidentiary hearing involving former Taylor Mayor Rick Sollars in front of Judge Goldsmith in the Eastern District Court. Shady Awad testified to the following:

1. "[T]hey would coordinate stuff years in advance like Victoria Shackelford (sp), I had to sell her house I was listing for 180 for 130, and then after she moved in, she wanted 15,000 dollars worth of work and then she gave me a check to buy the lot behind it and then I had to give her the check back." (Exhibit 1, pg 50, l. 9-13)

2. Q. "You had mentioned to the Court that you had lost money on a home in this redirect with a person by the name of Shackleford (sp); is that correct?"
   A. "Yes." (*Id.* at 58, l. 15-18).

3. Q. "And Ms. Shackleford, as you referring to the judge, the assistant Wayne County prosecutor Shackleford (sp)?"
   A. "Judge Shackleford (sp). I don't know what she was prior to, but the objective was to get her a house in Taylor and when Salamone (sp) was going to step down, the previous judge, then she was going to be appointed head judge." (*Id.*at 58, l. 19-24).

4. Q. What was her position then? Was she a prosecutor?
   A. I don't -- I didn't know, but all I did know was she was going to become the next judge. (*Id.* at 59, l. 11-13).

This testimony is false. After learning of this testimony, I met with the Department of Justice on April 12, 2024. I presented the exhibits relating to the purchase of my home and was provided a "no-target letter" stating I am not, and have never been, a target of the Taylor corruption investigation involving Shady Awad and the former mayor Rick Sollars. These allegations were previously investigated by the Governor's appointment committee during the 2021 appointment process, when they received an "anonymous" tip. I provided documents to the Governor's appointment committee and after an investigation, they found the allegations were meritless and appointed me to the bench in November of 2021.

I purchased my home at 7002 Syracuse, Taylor, MI on April 23, 2018. At that time, I did not know Judge Geno Salamone or the former mayor, Rick Sollars. My wife, Amy Zawacki, and I paid asking price for the home. The home had been sitting on the market for over a month with two price reductions prior to me making an offer on the home. After closing my wife and I learned Shady Awad had not obtained the Certificate of Occupancy-- a clear breach of the purchase agreement-

1

- and he signed a contract agreeing to complete the punch list needed to obtain the certificate. I never provided a check to Shady Awad to purchase a lot behind our home. After closing, we learned a portion of our home and fenced in yard were on a plat of land owned by the Wayne County Landbank. I had to purchase the lot since our house infringed onto it. My wife corresponded with the Wayne County Landbank, our realtor, Debbie Anteau, and the title insurance company to purchase the lot.

Shady Awad's perjury has had a direct impact on my career, reputation, and safety. I went from an unopposed election to having an opponent. My opponent began collecting signatures the day a reporter contacted me regarding this transcript. Judge Joe Slaven, the other judge at my court, who supports my opponent, is talking about me on the record in court proceedings and stating I was involved in this conspiracy based on this transcript. False articles and the transcript are being shared throughout my community on social media during an election year.Photos of my home and address have been posted on social media. The Taylor Police Department is now patrolling my neighborhood as a safety precaution. All of this is because Shady Awad lied under oath in an official proceeding. Allowing these lies to remain part of the record, without correction, will continue to cause great harm. I respectfully request the Department of Justice correct this and the lies about me be stricken from the record.

## 2. Awad's Testimony that Shackelford's Move to Taylor was Coordinated to Ensure She Succeeded Judge Salomone is a Lie.

Shady Awad testified there was coordination to sell me a home at the reduced rate of $130,000 so I could move to Taylor to be the next judge when Judge Geno Salomone retired. This statement is categorically false.

When I moved to Taylor in April 2018, I did not know Judge Geno Salomone or Rick Sollars. As an attorney, I rarely appeared at the 23rd District Court. I had only practiced in front of Judge Salomone three times in my entire career. (Exhibit 2). Between 2008 and 2013, I handled a traffic ticket and two misdemeanor cases before Judge Salomone. I did not appear in his courtroom between 2013 to 2018 on any matters.

Sometime in late 2018, Judge Salomone asked 33rd District Court Judge Michael McNally if he knew any attorneys that lived in the City of Taylor. Judge Salomone was considering retirement and hoped to meet attorneys residing in Taylor he could support in the appointment process. I have known Judge McNally for most of my legal career, as I served as appointed counsel at the

2

33rd District Court, and my wife is the Court's Court Administrator. Accordingly, Judge McNally knew I lived in Taylor.

In November 2018, Judge McNally invited me to meet Judge Salomone and the three of us met at Beirkeller in Taylor on November 5, 2018. Both Judge McNally and Judge Salomone will testify to these facts if called upon. Judge Salomone encouraged me to get more involved in the community and to consider seeking an appointment on a city board or commission. On November 6, 2018, I emailed Judge Salomone thanking him for the meeting. (See Snip below and Exhibit 3).

> On Tue, Nov 6, 2018 at 11:10 AM Victoria Shackelford <vshackelford@&#9608;&#9608;&#9608;&#9608;&#9608;&#9608; wrote:
>
> Hi Judge,
>
> Thanks so much for meeting with me and Judge McNally last night. I appreciate your insight and will getting more involved locally. I wanted to get you my contact information as soon as possible. My cell is 313-600-6267.
>
> Again, I really appreciated your taking the time to meet me.

He responded he would like to introduce me to the mayor. (See below and Exhibit 3).

**From:** Geno Salomone <gsalomone@&#9608;&#9608;&#9608;&#9608;
**Sent:** Tuesday, November 6, 2018 11:18 AM
**To:** Victoria Shackelford <vshackelford@&#9608;&#9608;&#9608;&#9608;
**Subject:** Re: meeting

It was my pleasure. I spoke with Mayor Sollars this morning. He was excited to hear of a new family and young professionals becoming residents here. He would like for us to all get together for lunch. Could you send me a resume or bio that I can forward to him. I had indicated that you were interested in being on a commission or board. We can pick potential lunch dates when you send the bio.

Sometime after this email, in late 2018 or early 2019, I met Rick Sollars and Judge Salomone for lunch at Malek Al Kabob. The lunch at Malek's is the only time I have ever met Rick Sollars to this day. We discussed the possibility of a board appointment, and I provided a copy of my resume. In February 2020, I was appointed to the Tax Assessor's Review Board.

I did not know Shady Awad, Rick Sollars, or Judge Salomone when I moved to Taylor in April 2018 and they did not know me. I bought the house at 7002 Syracuse and lived here for seven months before I was introduced to Judge Salomone and later, to Rick Sollars. There was no advance plan, there was no coordination, we were strangers. Shady's testimony to the contrary was a lie and should be stricken.

### 3. Awad's Testimony that He Reduced the Price of 7002 Syracuse from $180,000 to $130,000 to Entice Shackelford to Move to Taylor is a Lie.

Shady Awad testified he had to sell me a home valued at $180,000 for the reduced price of $130,000 as part of the criminal conspiracy between him and Rick Sollars. This testimony is false.

Our realtor was Debbie Anteau. After initial discussions, she provided a list of available downriver homes in Allen Park, Southgate, and Taylor. On March 13, 2018, I emailed her a list of homes we were interested in, and we viewed them days later. (See Snip below and Exhibit 4).

---

| | |
|---|---|
| **From:** | Victoria Shackelford - vshackelford@ |
| **Sent:** | Tuesday, March 13, 2018 8:10 PM |
| **To:** | deb.anteau@ |

Hi- we went through the houses and came up with a few we are interested in. There is a house showing up on Zillow that we are also curious about, I couldn't find it on the site you sent though, but they just reduced the price which makes me think it's still on the market. It's 15053 Dumay St. in Southgate. We would definitely like to see that house if it is available.

Some of the others we are interested in are: 16053 Oceana, 6613 King, 13475 Wesley, 7002 Syracuse, 2015 Culver Ave, 17421 Philomene...

This seems overwhelming and we don't really expect to see all of these immediately. We would like to see a few this weekend if you're available. We can do Friday evening, Saturday during the day, or all day Sunday.

Are we looking too early or is it time? If we want to move June/July?

Thanks! V & A

---

When we viewed 7002 Syracuse it had been on the market for over 30 days. It was listed on February 15, 2018 for $149,000. See Listing Date of 2/15/2018 and Original Listing Price of $149,000, both highlighted below. (See also Exhibit 5 and 6).



On February 26, 2018, after sitting on the market for two weeks, the sellers reduced the price to $139,000. On March 17, 2018, after sitting on the market for over a month, the sellers again reduced the price to $129,900. (See Snip of Trulia listing below and Exhibit 6).

**Price History for 7002 Syracuse St**

| Date | Price | Event | Source | |
|---|---|---|---|---|
| 03/07/2018 | $129,900 | Sold | N/A | ∨ |
| 03/17/2018 | $129,900 | PriceChange | Agent Provided | ∨ |
| 02/26/2018 | $139,900 | PriceChange | Agent Provided | ∨ |
| 02/15/2018 | $149,000 | Listed For Sale | Agent Provided | |

https://www.trulia.com/home/7002-syracuse-st-taylor-m-48180-88230844

We purchased the home for the asking price of $129,900 on April 23, 2018. (See Snip from Purchase Agreement and Exhibit 7).

Items specifically excluded in the Listing Agreement or MLS publication must be listed hereafter, or they will be deemed included in the sale:

PRICE: Buyer agrees to pay the sum of _____ One Hundred Twenty-Five Thousand _____ Dollars ($ 129,000.00 ) in consideration for which Seller will provide a warranty deed subject to existing building and use restrictions and easements and rights of way of record.

METHOD OF PAYMENT: All moneys must be paid in U.S. funds by cashier's check, wired funds, or such other funds acceptable

The home has been appraised twice since 2018. Both appraisals show the value of the home is consistent with the amount I paid for it. The first appraisal, dated March 23, 2018, valued the home

at $130,000. (Exhibit 8). The second appraisal, conducted when I refinanced the home in 2020, valued the home at $136,000. (Exhibit 9).

### 4. Awad's Testimony that Shackelford Wanted $15,000 of Work Done on the Home is a Lie.

Shady Awad testified that after I moved into the home, I "wanted" $15,000 worth of work done. Again, this testimony is a lie. The truth is Awad was in material breach of the purchase agreement and agreed to perform his contractual obligations in lieu of us rescinding.

In the signed Purchase Agreement, Shady Awad agreed to obtain the Certificate of Occupancy from the City of Taylor. (See Snip below and Exhibit 7).

41.  **OTHER TERMS AND CONDITIONS**:
     Seller to obtain Certificate of occupancy from City of Taylor.
     Seller to pay 3% of purchasers prepaids & group closing cost contributions.
     Sale is contingent upon purchasers acceptance of home inspection results.
     **BUYER SIGNATURE AND ACKNOWLEDGMENT OF RECEIPT:**  Buyer hereby makes this offer with terms and conditions contained herein and acknowledges receiving a copy of this Agreement.

| | | | |
|---|---|---|---|
| BUYER | Amy Zawacki | BUYER | *Amy Zawacki* |
| | _Please Print_ | | 3/17/2018 4:34:09 PM EDT / _Signature_ |
| BUYER | Victoria Shackelford | BUYER | *Victoria Shackelford* |
| | _Please Print_ | | 3/17/2018 4:34:23 PM EDT / _Signature_ |
| WITNESS | *Deborah Anteau* | DATE | 03/17/2018 |
| | 3/17/2018 4:31:17 PM EDT | | |

**SELLER SIGNATURE:**  Seller hereby agrees to terms and conditions contained herein.  Seller acknowledges receiving a copy of this Agreement.

| | | | |
|---|---|---|---|
| SELLER | *Shady Awad* | SELLER | Taylor Rehab Two LLC |
| | _Please Print_ | | |
| | 3/16/2018 11:16:11 AM EDT | | _Signature_ |
| SELLER | | SELLER | |

Just prior to closing, we visited 7002 Syracuse for the final walk-through. Contractors were preparing to paint the porches, as agreed to in an Addendum to the Purchase Agreement. (See Snip below and Exhibit 10).

6

This is an Addendum/Amendment to and becomes a part of Purchase Agreement dated

_____March_____20th_____2018_____ regarding property located at:

_____7002 Syracuse, Taylor MI 48180_____

**Seller agrees to the following to be completed by closing date:**

1. All porches to be painted.
2. Shower rod installed in such a way that will allow a curtain to hang and encompass the tub and contain splashing water.
3. Attic ladder repaidred
4. Central air unit installed.
5. Following appliances included:  washer, dryer and microwave.
6. All garbage and junk to be removed from backyard and garage.
7. Garage to be painted or power washed and new gutters hung.

At closing, Michigan Title had not received the Certificate of Occupancy. Awad's agent assured the parties that the Certificate would be emailed to the title company any minute. Based on these assertions, as well as the work being performed at the final walk-through, the parties proceeded with the closing.

We received the keys at closing and headed directly to the house. Upon arrival, we discovered the contractors had painted the porches with a paint sprayer and painted large segments of the house's siding. (See example of damage below as well as Exhibit 11).



The next day, I learned Awad had not obtained the Certificate of Occupancy, as his agent promised, and in fact, the City gave him a lengthy list of Failed Checklist Items that the Seller had to complete before the City would issue the Certificate of Occupancy.

Thereafter, I exchanged multiple emails with employees or agents of Shady Awad, demanding that Awad perform his duties under the Purchase Agreement. I also demanded that Awad agree, in writing, to complete the work and obtain the Certificate of Occupancy. (See Snip below and Exhibit 12).

```
ÿÿ
>> -----Original Message-----
>> From: Daniel Stockrahm [mailto:dstockrahm@realtytransition.com]
>> Sent: Wednesday, April 25, 2018 9:03 AM
>> To: Victoria Shackelford
>> Subject: Re: FW: 20180313,ABA,Failed CheckList Items, OF-28885
>>
>> Hi Victoria -
>>
>> Greg said he was able to walk through and get a handle on the work needed on your new home.
>>
>> As I said, we will correct the issues and get the final C of O issued as promised. Greg said he can schedule with you
nd get our crews working to fix the issues. If there is any problem going forward just let me know.
>>
>> I know you were concerned about the 3 day right of rescission, however, your lender would have to agree to extend
at. As an alternative, we will be more than happy to warrant the work so you get it done at no cost to you. The warranty
ould end when the work is complete and the final C of O is issued.
>>
>> I'm flexible if you have other thoughts on making sure your home is properly finished, just let me know what you need
nd we'll do our best to make it happen.
>>
>> Best regards,
>>
>> Dan Stockrahm
>> Project Administrator
>> Realty Transition LLC
```

```
>> On Wed, Apr 25, 2018 at 1:07 PM, Victoria Shackelford <vshackelford@            wrote:
>>> Dan, I am content having something in writing, signed by the parties
>>> that the work will be performed in a workman like manner (the work I
>>> went over with Greg and the remaining work needed to obtain the C of
>>> O). I don't mind giving 30 days from the date of closing but I do
>>> want the C of O as soon as possible. As long as I have offer,
>>> acceptance and consideration. I don't really care about the right to
>>> rescind. I just want an assurance that if the work is not performed,
>>> there is someone legally on the hook for it besides me. Honestly, I
>>> hope it would never come to that, but again, I can't leave this to
>>> trust after coming to my new home covered in orange junk and finding
>>> out the seller's agent's assurance the C of O was being emailed was
>>> never actually obtained. A simple contract signed by the parties is
>>> sufficient. Let me know, Victoria
>>>
>>> I am concerned because time is of the essence and this contract has to be done before the rescission period ends.
>>>
```

Ultimately, Awad signed a Repair Agreement, where he admitted he breached the Purchase Agreement.( See Snip below and Exhibit 13).

WHEREAS. Sellers failed to produce the Certificate of Occupancy at closing, but assured the Purchasers it would be emailed to the Title Company immediately:

WHEREAS. Purchasers agreed to proceed with the Closing because the porches were in the process of being painted and Purchasers believed the Certificate of Occupancy was forthcoming; and

WHEREAS. the Purchasers inspected the Property after Closing and discovered the painters sprayed the siding with the paint from the porches; and

WHEREAS. on April 24, 2018, the Purchasers learned no Certificate of Occupancy exists, instead receiving a Failed Checklist of Items from the City of Taylor, dated 3/12/2018, attached as Exhibit 3; and

In the Agreement, Awad agreed to correct the Failed Checklist Items, perform the work agreed to in the Purchase Agreement, and provide a Certificate of Occupancy. (See Snip below and Exhibit 13).

WHEREAS. Sellers have agreed to complete the items listed on Exhibit 1, Exhibit 2, and Exhibit 3; and

WHEREAS. Sellers have agreed to repair the damage to the siding caused on April 23, 2018; and

WHEREAS. Sellers have agreed to provide a Certificate of Occupancy to the Purchasers.

Awad was in material breach of the Purchase Agreement. I did not "want" an additional $15,000 worth of work done on the home. I wanted Awad to perform his duties under the contract and repair the siding damaged by his contractors.

5. **Awad's Testimony that He Colluded with Shackelford to Purchase an Extra Lot is False.**

Awad testified "then she gave me a check to buy the lot behind it and then I had to give her the check back (Exhibit 1, pg 50, l. 11-13). Once again, this statement is completely false.

Shortly after we moved into the home, we received a letter from the Wayne County Landbank asking if we were interested in purchasing a side lot through their "Sidelot Program." Amy Zawacki, my wife, communicated with Collin Roach from the Wayne County Landbank to request a map or diagram showing the lot at issue. Mr. Roach emailed the following map: (Exhibit 14).



 The blue or turquoise rectangle indicates the piece of land that was for sale through the Sidelot program. As can be seen, a portion of my house, which is located in the lot south of the lot for sale, sits on that lot.

Further, the lot at issue was part of our fenced in yard. The circled area on the photo below shows the fence surrounding my yard, which is the same lot shown on the plat map above. (Exhibit 15).



 Amy Zawacki expressed these concerns to Mr. Roach while communicating about the purchase of the lot. (See Snip below and Exhibit 16).



Amy also emailed our realtor, Debbie Anteau, to advise her of the situation and ask for a copy of the Purchase Agreement. (See Snip below and Exhibit 16).



Ms. Anteau contacted Michigan Title and advised us to pay nothing while they were researching the issue. See Snip below and Exhibit 16).

11

**From:** Debbie Anteau [mailto:deb.anteau@██████████]
**Sent:** Wednesday, June 20, 2018 9:45 AM
**To:** Amy Zawacki <admin@████████ >
**Subject:** Re: FW: 0 Syracuse - Map

Amy,

Do not pay anything! This is why you pay for title insurance. I apologize for the delay in getting back with you. Yesterday we were driving 15 hours from South Carolina, and I didn't check my email until this morning. I have already called Michigan Title and they are looking into this right now. Jennifer will be calling me shortly. She was taking the file to her supervisor and into examining, for them to start the process. I will email or text you as soon as i know more.

Shady Awad sold a house that was sitting on property he did not own. As such, we were forced to purchase the property and did so on June 26, 2018 for $500.00. (See Exhibit 16 and 17). To the best of my recollection, Michigan Title issued the check for this lot. We had no reason to issue Shady Awad a check since we were dealing directly with the Wayne County Land Bank. We did not communicate with Awad about this issue and did not give him a check. He is a liar.

## 6. Conclusion

I was stunned to learn of the allegations made about me under oath in this political corruption case. I have never been contacted by the FBI, DOJ, or any other law enforcement agency regarding the purchase of my home. I learned of this testimony a month after it occurred from a reporter on April 8, 2024.

This testimony from Shady Awad is knowingly false. Shady Awad is the government's witness and the lies about me occurred during direct examination by AUSA Francis Carlson. After learning of the perjury, I immediately contacted AUSA Rob Moran and AUSA Francis Carlson. I met with them as well as AUSA John Neal and an FBI agent on April 12, 2024. I provided the exhibits attached to this brief. After our meeting, the DOJ sent me a "No-target" letter stating I am not, and never was, a target in this criminal investigation. The Department of Justice knows I did nothing wrong.

The under oath false statements about me have caused considerable damage to my career and reputation. I have an election this year and up until the release of this transcript I was running unopposed. My opponent began collecting signatures on April 8, 2024, which is the same day the reporter contacted me about this transcript. I now have an opposed election. The other judge in my court is referring to this transcript in open court. I have a blogger writing multiple false articles about me based on Awad's lies. (Exhibit 18). The articles have been shared all over social media in the Downriver community. The transcripts have been posted online and are also being shared

on social media. My address and photos of my home have been shared on social media and the local police have patrol cars driving down my street to protect my family.

The community does not understand the significance of the "no-target" letter, all they know is there is an official transcript saying I was part of a criminal conspiracy with Shady Awad and Rick Sollars. The only solution that can begin to repair the damage to my reputation and career is for the government to do the right thing and correct this transcript. I am an innocent party who is suffering actual harm because of a prosecutor's decision to use a liar as their witness and allow perjury to remain on the record.

Respectfully,

*Victoria I. Shackelford*

Victoria I. Shackelford
23rd District Court

13

# EXHIBIT B



**United States Department of Justice**

United States Attorney's Office
Eastern District of Michigan

*Frances Lee Carlson*
*Robert A. Moran*
Assistant United States Attorneys

211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Telephone: (313) 226-9100
E-Mail: frances.carlson@usdoj.gov
        robert.moran@usdoj.gov

April 12, 2024

***Via E-mail Only***
The Honorable Victoria Shackelford
23rd District Court
23365 Goddard Road
Taylor, MI 48180

Re: *United States v. Richard Sollars. et. al*

Dear Judge Shackelford:

Please be advised that you are not presently, nor have you previously been, the target of an investigation conducted in this district relating to, in general terms, public officials in the City of Taylor corruptly receiving benefits from Shady Awad and others.

Sincerely,

Frances Lee Carlson
Assistant U.S. Attorney

Robert A. Moran
Assistant U.S. Attorney

# EXHIBIT

# C

Founded in 1852
by Sidney Davy Miller

# MILLER CANFIELD

MICHIGAN
ILLINOIS
NEW YORK
OHIO
WASHINGTON, D.C.
CALIFORNIA
CANADA
CHINA
MEXICO
POLAND
UKRAINE
QATAR

**Thomas W. Cranmer**
**TEL +1.248.267.3381**
**FAX +1.248.879.2001**
**E-MAIL cranmer@MillerCanfield.com**

Miller, Canfield, Paddock and Stone, P.L.C.
840 W. Long Lake Road, Suite 150
Troy, Michigan 48098
TEL (248) 879-2000
FAX (248) 879-2001
millercanfield.com

April 29, 2024

*Via Email and First Class Mail*

Dawn N. Ison, Esq.
United States Attorney
United States Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3220

John K. Neal, Esq.
Assistant United States Attorney
United States Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3220

Frances L. Carlson, Esq.
Assistant United States Attorney
United States Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3220

Robert A. Moran, Esq.
Assistant United States Attorney
United States Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3220

Re:    The Honorable Victoria Shackelford

Dear Colleagues:

I am writing on behalf of the Honorable Victoria Shackelford, a judge in the 23rd District Court for the State of Michigan in connection with the recent testimony of Mr. Shady Awad in a sentencing hearing involving Rick Sollars before the Honorable Mark Goldsmith. I have spoken with Mr. Neal on several occasions regarding this matter and he has appropriately requested that any further communications on the matter go through counsel and not come from Judge Shackelford, directly.

Enclosed you will find Judge Shackelford's Response to Shady Awad's False and Defamatory Testimony and attached exhibits that succinctly sets forth the substantial harm caused to Judge Shackelford by Mr. Awad's recent false testimony. Whether the testimony is characterized as perjurious (as Judge Shackelford does in her accompanying Response) or simply "mistaken," it is categorically and demonstrably false nonetheless. The attached documentation proves this point beyond any doubt whatsoever.

While I recognize that the government has issued a "non-target" letter to Judge Shackelford, I respectfully suggest that this remedial measure – while helpful – is not sufficient. Under MRPC 3.3(a)(3) regarding Candor Toward the Tribunal, I believe that the government has an ethical obligation to correct this false testimony.

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

-2-                                        April 29, 2024

        Whether it is by way of a motion or "Notice to Correct the Record," or some other court filing, I believe that further corrective action must be taken to bring this matter to the attention of Judge Goldsmith and I respectfully request that you do so immediately.


                                   Very truly yours,

                                   Thomas W. Cranmer

                                   Thomas W. Cranmer


TWC/llr

cc:    The Honorable Victoria Shackelford